# STATE OF CONNECTICUT v. JAMISON MARTIN WAZ (15471)

Borden, Berdon, Norcott, Palmer and Peters, Js.

Argued November 5, 1996—officially released April 15, 1997

*Anthony J. Bosco III*, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *John T. Redway*, state's attorney, *Russell C. Zentner*, assistant state's attorney, and *Tracy Carlson*, certified legal intern, for the appellee (state).

*Opinion*

PALMER, J. The sole issue presented by this appeal is whether article first, § 7, of the Connecticut constitution[1] prohibits the police from subjecting a mail parcel in the possession of the United States Postal Service to a canine sniff examination by a trained narcotics detection dog based upon a reasonable and articulable suspicion that the mail contains illegal drugs. The defendant, Jamison Martin Waz, entered a conditional plea of nolo contendere, under General Statutes § 54-94a and Practice Book § 4003 (a),[2] to possession of

---

[1] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion

more than four ounces of marijuana in violation of General Statutes § 21a-279 (b)[3] following the trial court's denial of his motion to suppress marijuana found in a parcel seized from his automobile. The trial court accepted the plea and rendered judgment thereon.[4] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The relevant facts, as set forth in the trial court's decision on the defendant's motion to suppress, are undisputed. "On March 24, 1994, Postal Inspector Thomas Lambert identified an Express Mail[5] package addressed to Down Deep, Inc., 34-3 Shunpike Road, #104, Cromwell, CT. 06416 as fitting characteristics of the 'drug package profile.' This profile consists of the following characteristics: [1] [s]ize and shape of the package; [2] [w]hether the package is taped to close or

to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." Practice Book § 4003 (a) contains a substantially similar provision.

[3] General Statutes § 21a-279 (b) provides: "Any person who possesses or has under his control any quantity of a hallucinogenic substance other than marijuana or four ounces or more of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than five years or be fined not more than two thousand dollars or be both fined and imprisoned, and for a subsequent offense may be imprisoned not more than ten years or be fined not more than five thousand dollars or be both fined and imprisoned."

[4] The trial court sentenced the defendant to a term of imprisonment of five years, execution suspended after ninety days, and three years probation.

[5] Express Mail is a service offered by the United States Postal Service whereby delivery of a parcel is guaranteed by the next day.

seal all openings; [3] [h]andwritten or printed labels; [4] [n]ature and destination of the package; [5] [t]he absence or presence of odors; [6] [w]hether the zip code of the sender matches that put on by the postal clerk; [7] [w]hether it contains a fictitious return address; [8] [o]rigin of the package; and [9] [t]he outward appearance of the package.

"At a suppression hearing held on September 22 and October 27, 1994, Lambert testified that the Down Deep, Inc. package fit a number of characteristics relative to the drug package profile. Such characteristics included: [1] [t]he fact that the edges were taped to seal all openings; [2] [t]he package contained a fictitious return address; [3] [t]he package contained handwritten labels; [4] [i]t came from a source state, i.e., California; and [5] [t]he size and shape of the package. He further stated that the package was sent via Express Mail which, based on his seven years of training and experience as a Postal Inspector and four years experience in narcotic[s] investigations, is primarily the exclusive carrier used by individuals to transport controlled substances through the United States mail.

"It was a combination of each of these profile characteristics as well as the use of Express Mail which gave rise to Lambert's suspicions that the parcel contained a controlled substance. He then removed the package from the mail stream and obtained a narcotics trained dog named 'Zak'[6] to externally examine the parcel. The parcel was placed among eight other similar sized parcels. Zak, however, twice alerted to the Down Deep, Inc. parcel while it was placed in different positions on the floor.

"Lambert then applied for and obtained a federal search warrant to open the package. When the search

---

[6] Although Lambert supervised the investigation, Zak was under the control and supervision of Trooper Gerald Wagner of the Connecticut state police.

warrant was executed, it was discovered that the package contained approximately one-half pound of suspected marijuana. A field test revealed a positive reaction for the presence of marijuana. The package was then resealed for the purpose of conducting a controlled delivery. Later that day on March 24, 1994, members of the mid-state narcotics unit and Postal Inspectors Lambert and Terry Loftus began surveillance of the mail drop addressed to Down Deep, Inc. At approximately 2:28 p.m. on March 24, 1994, the defendant picked up the Down Deep, Inc. package from the mail drop. Shortly thereafter, he was stopped and taken into custody. The parcel containing marijuana was seized from the right front floorboard of the vehicle the defendant was operating." The defendant was arrested and charged with possession of marijuana and possession of marijuana with intent to sell.

The defendant moved to suppress the marijuana on the ground that the canine sniff of the parcel was a warrantless search in violation of the fourth amendment to the United States constitution[7] and article first, § 7, of the Connecticut constitution. The trial court concluded that although the canine sniff was not a search within the meaning of the fourth amendment, the brief seizure of the parcel for the purpose of conducting the canine sniff required a showing of reasonable and articulable suspicion. The trial court further concluded that because the state had established that Lambert had a reasonable and articulable suspicion that the parcel contained illegal drugs, the defendant's federal constitutional claim was without merit. The trial court declined to address the defendant's state constitutional claim

[7] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

because he had failed to provide an adequate analysis of that claim. Accordingly, the trial court denied the defendant's suppression motion. The defendant then entered a conditional plea of nolo contendere to a substitute information charging him with possession of more than four ounces of marijuana,[8] and this appeal from the trial court's judgment of conviction followed.

On appeal, the defendant does not challenge the trial court's conclusion that Lambert possessed a reasonable and articulable suspicion concerning the contents of the parcel. Nor does he claim that the investigation of his parcel caused any delay in its delivery or that its brief removal from the mail stream constituted an unreasonable seizure in violation of article first, § 7, of the constitution of Connecticut.[9] Rather, the defendant's sole contention is that the canine sniff of the parcel constituted a search for purposes of article first, § 7, and, therefore, that the state was required to obtain a search warrant based upon probable cause before subjecting the mail to the canine sniff.[10] The state claims that the canine sniff was not a search within the meaning of article first, § 7, and, consequently, that the use of that investigative technique does not implicate the state constitutional prohibition against unreasonable

[8] The state withdrew the charge of possession of marijuana with intent to sell.

[9] Cf. *United States* v. *Place*, 462 U.S. 696, 706–707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) (without violating fourth amendment, police may briefly detain luggage located in public area of airport for purpose of subjecting it to canine sniff upon reasonable and articulable suspicion that luggage contains illegal drugs); id., 717–18 n.5 (Brennan, J., concurring) (" '[T]he mere detention of mail not in [the defendant's] custody or control amounts to at most a minimal or technical interference with his person or effects, resulting in no personal deprivation at all.' [*United States* v. *Place*, 660 F.2d 44, 53 (2d Cir. 1981), aff'd, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983).]").

[10] Although the defendant suggested at oral argument that he did not intend to abandon his fourth amendment claim, his brief focuses solely on his state constitutional claim. Accordingly, we will consider only that claim.

searches.[11] The state further maintains that even if the canine sniff was a search within the meaning of article first, § 7, it was constitutionally permissible because Lambert had a reasonable and articulable suspicion that the parcel contained contraband.[12] We need not decide whether the canine sniff of the parcel constituted a search under article first, § 7, because we conclude that even if it did, the state constitution requires no more than a showing that the investigating officers had a reasonable and articulable suspicion that the parcel contained contraband.[13]

[11] The state also argues that we should decline to review the defendant's state constitutional claim because he makes no express reference to the guidelines governing our review of unpreserved constitutional claims set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Although the defendant did fail to engage in the analysis called for by *Golding*, the state, at oral argument, acknowledged that the factual record is sufficient for review of the defendant's claim under *Golding*. Cf. *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995) (appellate review appropriate despite defendant's failure to invoke *Golding* regarding unpreserved claim of constitutional error). We will address the defendant's state constitutional claim, therefore, despite his failure to invoke our review under the criteria specified in *Golding*. We admonish defendants who seek consideration of unpreserved constitutional claims, however, that they bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding*.

Finally, the state notes that it "does not concede that the defendant has standing to challenge the canine sniff of the parcel addressed to a fictitious entity, despite the trial court's ruling to the contrary." Because the state has failed to brief this issue, we decline to address it.

[12] The state does not claim either that the drug package profile alone provided the probable cause required for the issuance of the federal search warrant or that the affidavit in support of the warrant otherwise contained sufficient information independent of the canine alert to support its issuance. Accordingly, the state does not challenge the defendant's claim that the marijuana seized pursuant to the federal search warrant must be suppressed as "fruit of the poisonous tree" if the canine sniff was constitutionally impermissible. See, e.g., *State* v. *Greenfield*, 228 Conn. 62, 67, 634 A.2d 879 (1993).

[13] In *State* v. *Torres*, 230 Conn. 372, 645 A.2d 529 (1994), we recently considered a constitutional challenge to the use of a trained narcotics detection dog. In *Torres*, the defendant claimed that the canine sniff of his automobile was an unconstitutional search under both the federal and the state constitutions because it was not supported by a reasonable and articulable suspicion. Id., 380. We concluded that the police, who had relied upon a

As we have indicated, the defendant concedes that Lambert had a reasonable and articulable suspicion that the parcel contained illegal drugs, and the state concedes that Lambert did not have probable cause to believe that the parcel contained contraband prior to the canine alert. Because we assume, without deciding,

highly accurate anonymous tip in stopping and conducting a canine sniff of the defendant's vehicle, possessed a reasonable and articulable suspicion that the vehicle contained contraband. Id., 384. We declined, however, to reach the issue of whether the canine sniff at issue constituted a search under either the federal or the state constitution "because: (1) we have found no case that has held such a sniff of an automobile, properly stopped by the police, to a standard more demanding than reasonable and articulable suspicion . . . (2) the defendant in oral argument in this court conceded that standard to be applicable to the facts of this case; and (3) the canine sniff of the defendant's automobile at issue here was based on reasonable and articulable suspicion." Id., 381–82; see also *State* v. *Smith*, 38 Conn. App. 29, 40–41, 658 A.2d 156 (1995) (even if canine sniff of luggage left unclaimed at airport baggage counter for over five hours constituted search for purposes of fourth amendment, federal constitutional requirements were met since police had reasonable and articulable suspicion regarding contents of luggage).

The present case differs from *Torres* in three material respects. First, the defendant in this case contends that probable cause, rather than reasonable and articulable suspicion, is the standard to be applied to the canine sniff. Second, this case does not involve the search of an automobile, which is an established exception to the warrant requirement under both the fourth amendment; see *Chambers* v. *Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Carroll* v. *United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); and article first, § 7. See *State* v. *Delossantos*, 211 Conn. 258, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); *State* v. *Dukes*, 209 Conn. 98, 547 A.2d 10 (1988); cf. *State* v. *Miller*, 227 Conn. 363, 630 A.2d 1315 (1993). Finally, the defendant in the present case does not dispute that the postal inspector had a reasonable and articulable suspicion that the parcel contained contraband. As in *Torres*, however, we need not, and therefore do not, decide whether, or in what circumstances, a canine sniff constitutes a search for purposes of the state constitution. *State* v. *Torres*, supra, 230 Conn. 382 (we generally will not consider constitutional question unless its resolution is absolutely necessary to case). We note, however, that "[f]ederal courts that have addressed the issue of whether a canine sniff is a search have come to different results depending on the circumstances of the search and to what extent the search infringes on reasonable expectations of privacy. . . . State courts also have reached varied conclusions under their state constitutions." (Citations omitted.) Id., 381–82 n.5.

that the canine sniff of the mail constituted a search for purposes of the state constitution, we must determine whether Lambert was required to obtain a search warrant based upon probable cause before subjecting the parcel to the canine sniff, as the defendant claims, or whether Lambert's reasonable and articulable suspicion that the parcel contained contraband provided a sufficient constitutional basis for the use of that technique, as the state contends.[14]

"When evaluating the rights afforded to Connecticut citizens under the state constitution, we consider, to the extent applicable, six factors: (1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of our constitutional forebears; and (6) contemporary understandings of

[11] Before embarking upon an analysis of these competing claims, we first note the similarities and distinctions between the two tests. Both are objective standards to be applied from the perspective of a reasonable police officer in light of the totality of the known circumstances. See, e.g., *State* v. *Trine*, 236 Conn. 216, 224–25, 673 A.2d 1098 (1996); *State* v. *Diaz*, 226 Conn. 514, 541, 628 A.2d 567 (1993). The two standards differ, however, with respect to the nature and amount of information available to the police. "Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." (Internal quotation marks omitted.) *State* v. *Diaz*, supra, 541. In contrast, reasonable and articulable suspicion requires that the investigating officer "be able to point to specific and [identifiable] facts which, taken together with rational inferences from those facts," provide "a particularized and objective basis" for suspecting that criminal activity is afoot. (Internal quotation marks omitted.) See *State* v. *Cofield*, 220 Conn. 38, 45, 595 A.2d 1349 (1991). Consequently, although reasonable and articulable suspicion is more than mere speculation or conjecture; id.; it "is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable to show probable cause. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Groomes*, 232 Conn. 455, 468, 656 A.2d 646 (1995).

applicable economic and sociological norms. *State* v. *Ross*, 230 Conn. 183, 249, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *State* v. *Geisler*, [222 Conn. 672, 684–86, 610 A.2d 1225 (1992)]." *State* v. *Trine*, 236 Conn. 216, 230 n.12, 673 A.2d 1098 (1996). In this case, our adjudication of the defendant's state constitutional claim is informed principally by those federal and sister state cases involving the use of a trained narcotics detection dog.[15] Our review of those precedents persuades us that the canine sniff in this case did not violate article first, § 7, of the state constitution.[16]

---

[15] To the extent the other factors bear even marginal relevance to the issue before us, they do not provide support for the defendant's claim. First, the text of article first, § 7, is similar to the language of the fourth amendment; see, e.g., *State* v. *Miller*, 227 Conn. 363, 381, 630 A.2d 1315 (1993); *State* v. *Marsala*, 216 Conn. 150, 159, 579 A.2d 58 (1990); and, as we discuss more fully hereinafter, the overwhelming weight of authority interpreting the fourth amendment is contrary to the state constitutional argument espoused by the defendant. Second, the history of article first, § 7, sheds no light on the appropriate standard to be applied to a canine sniff because that investigative technique was unknown at the time our constitution was adopted in 1818. See *State* v. *Miller*, supra, 381–82; cf. *State* v. *Marsala*, supra, 167 n.12 (article first, § 7, enacted to prohibit general warrants and writs of assistance). Third, the holdings and dicta of this court and the Appellate Court lend no support to the claim advanced by the defendant. See footnote 13. Finally, the defendant suggests no contemporary economic or sociological considerations that militate in favor of his state constitutional argument.

[16] Of course, our analysis is guided by the well established principle that a search or seizure conducted without a warrant issued upon probable cause is presumptively unreasonable. See *Katz* v. *United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State* v. *Lewis*, 220 Conn. 602, 609, 600 A.2d 1330 (1991). "Our constitutional preference for warrants is overcome only in specific and limited circumstances. See, e.g., *State* v. *Geisler*, supra, [222 Conn.] 691 (recognizing emergency exception as matter of state constitutional law); *State* v. *Delossantos*, 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989) (recognizing exception for search incident to arrest as matter of state constitutional law); *State* v. *Dukes*, [209 Conn. 98, 126, 547 A.2d 10 (1988)] (recognizing automobile exception on the highway as a matter of state constitutional law)." *State* v. *Miller*, 227 Conn. 363, 383, 630 A.2d 1315 (1993). Among the other recognized exceptions to the warrant requirement under

The seminal federal case involving the use of a trained narcotics detection dog is *United States* v. *Place*, 462 U.S. 696, 707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983), wherein the United States Supreme Court concluded that a canine sniff of luggage briefly detained upon reasonable suspicion in a public airport "[does] not constitute a 'search' within the meaning of the Fourth Amendment."[17] See also *United States* v. *Jacobsen*, 466 U.S. 109, 123–24, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).[18] In concluding that the use of the canine sniff technique in those circumstances did not constitute a search requiring probable cause, the *Place* court stated that "[a] 'canine sniff' by a well-trained narcotics detection dog . . . does not require opening the luggage. It does not expose noncontraband items that otherwise would

the state constitution is the brief detention of an individual for investigative purposes if the investigating officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. See, e.g., *State* v. *Trine*, supra, 236 Conn. 223. This exception to the warrant requirement, first recognized under the federal constitution in *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), also permits the officer to conduct a limited weapons search of the detained individual if the officer reasonably believes that the individual might be armed and dangerous. *State* v. *Trine*, supra, 223–24.

[17] In determining that the initial seizure of the luggage for the purpose of subjecting it to a canine sniff was justified upon a showing of reasonable and articulable suspicion, the court balanced "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion"; *United States* v. *Place*, supra, 462 U.S. 703; and concluded that the principles underlying the exception to the probable cause requirement for limited seizures of the person recognized in *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and its progeny were equally applicable to the detention of the luggage in that case. *United States* v. *Place*, supra, 705–706. The court went on to conclude, however, that the length of the detention of the defendant's luggage "exceeded the permissible limits of a *Terry*-type investigative stop." Id., 709. As previously noted, the defendant in this case challenges only the examination of the parcel by the trained narcotics detection dog, and not the seizure of the parcel or the length of its detention by the investigating officers.

[18] In *United States* v. *Jacobsen*, supra, 466 U.S. 123–24, the United States Supreme Court expressly adopted its conclusion in *Place* as a holding.

remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods. . . . We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." *United States* v. *Place,* supra, 707.

For the reasons enumerated in *Place,* federal courts are unanimous in concluding that the fourth amendment is not violated when police briefly detain a piece of mail suspected of containing illegal drugs for the purpose of subjecting it to an examination by a trained narcotics detection dog. See, e.g., *United States* v. *Banks,* 3 F.3d 399, 402 (11th Cir. 1993), cert. denied, 510 U.S. 1129, 114 S. Ct. 1097, 127 L. Ed. 2d 410 (1994) (package sent via Express Mail); *United States* v. *Aldaz,* 921 F.2d 227, 229–31 (9th Cir. 1990), cert. denied, 501 U.S. 1207, 111 S. Ct. 2802, 115 L. Ed. 2d 975 (1991) (package sent via United States mail using express delivery); *United States* v. *Lux,* 905 F.2d 1379, 1381–82 (10th Cir. 1990) (package sent via Express Mail); *United States* v. *LaFrance,* 879 F.2d 1, 8 (1st Cir. 1989) (package sent via Federal Express); *United States* v. *Mayomi,* 873 F.2d 1049, 1053–54 (7th Cir. 1989) (mail received at private mail box); *Garmon* v. *Foust,* 741 F.2d 1069, 1072–73 (8th Cir. 1984) (mailed package received at dormitory); *United States* v. *Martinez,* 869 F. Sup. 202,

205–207 (S.D.N.Y. 1994) (packages sent via Express Mail); *United States* v. *Dillon*, 810 F. Sup. 57, 61 (W.D.N.Y. 1992) (parcels shipped via United Parcel Service); *United States* v. *Cantrall*, 762 F. Sup. 875, 878–80 (D. Kan. 1991) (package sent via Express Mail); *United States* v. *Sklar*, 721 F. Sup. 7, 14 (D. Mass. 1989) (package sent via Express Mail), rev'd in part on other grounds, 920 F.2d 107 (1st Cir. 1990) ; *United States* v. *Holden*, Docket No. 88-20105-01, 1989 U.S. Dist. LEXIS 1144, *5 (D. Kan. Jan. 9, 1989) (package sent via Express Mail); *United States* v. *Mena*, Docket No. 86-CR-524, slip. op. (N.D. Ill. Oct. 20, 1986) (package shipped via United Parcel Service).[19]

State courts are similarly in accord, under their respective state constitutions, that the police need no more than a reasonable and articulable suspicion to justify the use of the canine sniff technique on an object that has been briefly detained for that purpose. A number of state courts have concluded that a canine sniff is not a search for state constitutional purposes and,

---

[19] State courts considering the question have also concluded that a canine sniff examination of a piece of mail is not a search requiring probable cause for purposes of the fourth amendment. See, e.g., *State* v. *1969 Volkswagon Bus*, 120 Ariz. 365, 367, 586 P.2d 210 (1978) (parcel shipped via United Parcel Service); *People* v. *Salih*, 173 Cal. App. 3d 1009, 1015, 219 Cal. Rptr. 603 (1985) (mail parcel); *Daniels* v. *Cochran*, 654 So. 2d 609, 612–13 (Fla. App. 1995) (package sent via Federal Express); *State* v. *Snitkin*, 67 Haw. 168, 173, 681 P.2d 980 (1984) (package at Federal Express office); *State* v. *Daly*, 14 Kan. App. 2d 310, 318–19, 789 P.2d 1203 (1990), review denied, 246 Kan. 769 (1990) (package sent via Federal Express); *State* v. *Phaneuf*, 597 A.2d 55, 58 (Me. 1991) (package sent via first class mail); *State* v. *Morrison*, 243 Neb. 469, 475–76, 500 N.W.2d 547 (1993) (package sent via Express Mail); *State* v. *Kesler*, 396 N.W.2d 729, 734–35 (N.D. 1986) (package sent via fourth class mail); *State* v. *Stanphill*, 53 Wash. App. 623, 630–31, 769 P.2d 861 (1989) (package sent via Express Mail); see also *State* v. *Walker*, 530 So. 2d 1200, 1203 (La. App.), cert. denied, 532 So. 2d 763 (La. 1988) (indicating canine sniff of package shipped by commercial carrier not search under fourth amendment); *State* v. *Cooper*, 163 Vt. 44, 48, 652 A.2d 995 (1994) (indicating canine sniff of package sent via Express Mail not search under fourth amendment).

consequently, that a judicial determination of probable cause prior to subjecting the item to an examination by a trained narcotics detection dog is unnecessary. See, e.g., *People* v. *Mayberry*, 31 Cal. 3d 335, 337, 644 P.2d 810, 182 Cal. Rptr. 617 (1982) (luggage in airport); *Daniels* v. *Cochrane*, 654 So. 2d 609, 612–13 (Fla. App. 1995) (package sent via Federal Express); *O'Keefe* v. *State*, 189 Ga. App. 519, 526, 376 S.E.2d 406 (1988) (automobile); *State* v. *Snitkin*, 67 Haw. 168, 173, 681 P.2d 980 (1984) (package at Federal Express office); *State* v. *Cancel*, 256 N.J. Super. 430, 436–37, 607 A.2d 199 (1992), cert. denied, 134 N.J. 484, 634 A.2d 530 (1993) (routine use of dogs to detect narcotics at public airports); *State* v. *Villanueva*, 110 N.M. 359, 362–63, 796 P.2d 252 (N.M. App.), cert. denied, 110 N.M. 260, 794 P.2d 734 (1990) (luggage at border checkpoint); *State* v. *Waldroup*, 100 Ohio App. 3d 508, 514, 654 N.E.2d 390 (1995) (automobile); *State* v. *Palicki*, 97 Ohio App. 3d 175, 181–82, 646 N.E.2d 494 (1994) (automobile); *State* v. *Stanphill*, 53 Wash. App. 623, 630–31, 769 P.2d 861 (1989) (package sent via Express Mail); *State* v. *Boyce*, 44 Wash. App. 724, 730, 723 P.2d 28 (1986) (safety deposit box). Moreover, the vast majority of state courts that have determined that the use of a trained narcotics detection dog constitutes a search for state constitutional purposes have also concluded that, because of the search's relatively unintrusive, contraband-specific nature, no more than a reasonable and articulable suspicion is required to justify the search. See, e.g., *McGahan* v. *State*, 807 P.2d 506, 510–11 (Alaska App. 1991) (exterior of warehouse); *Pooley* v. *State*, 705 P.2d 1293, 1311 (Alaska App. 1985) (luggage checked with airline); *People* v. *May*, 886 P.2d 280, 281 (Colo. 1994) (package sent via Express Mail); *People* v. *Boylan*, 854 P.2d 807, 811 (Colo. 1993) (package sent via Federal Express); *People* v. *Unruh*, 713 P.2d 370, 377–78 (Colo.), cert. denied, 476 U.S. 1171, 106 S. Ct. 2894, 90 L. Ed. 2d 981 (1986)

(safe in police custody); *State* v. *Pellicci*, 133 N.H. 523, 534–35, 580 A.2d 710 (1990) (automobile); *People* v. *Dunn*, 77 N.Y.2d 19, 25–26, 564 N.E.2d 1054, 563 N.Y.S.2d 388 (1990), cert. denied, 501 U.S. 1219, 111 S. Ct. 2830, 115 L. Ed. 2d 1000 (1991) (common hallway outside defendant's apartment door); *Commonwealth* v. *Johnston*, 515 Pa. 454, 462–64, 530 A.2d 74 (1987) (rented storage locker); cf. *People* v. *Offen*, 78 N.Y.2d 1089, 1091, 585 N.E.2d 370, 578 N.Y.S.2d 121 (1991) (even if canine sniff of package shipped by United Parcel Service was search, it was justified by reasonable and articulable suspicion); *State* v. *Kosta*, 75 Or. App. 713, 719, 708 P.2d 365 (1985) (even if canine sniff of package sent via Federal Express was search, it was justified by reasonable and articulable suspicion), aff'd on other grounds, 304 Or. 549, 748 P.2d 72 (1987); but see *Commonwealth* v. *Martin*, 534 Pa. 136, 143, 626 A.2d 556 (1993) (probable cause required for canine sniff of satchel being carried by suspect). Thus, the overwhelming weight of federal and sister state authority supports the state's contention that a canine sniff examination of a mail parcel briefly detained upon reasonable and articulable suspicion does not run afoul of constitutionally protected privacy rights.[20]

---

[20] Indeed, neither the dissent nor the defendant has cited a single case—either federal or state—in which a standard higher than reasonable and articulable suspicion has been deemed applicable to a canine sniff of a parcel sent through the mail.

Moreover, the dissent's reliance on *Doe* v. *Renfrow*, 475 F. Sup. 1012 (N.D. Ind. 1979), aff'd in part, 631 F.2d 91 (7th Cir. 1980), is profoundly misplaced. In that case, local school officials, acting only on a generalized suspicion of drug use in the school, subjected every student at the school to an examination by a trained narcotics detection dog. The dog erroneously alerted to several students, including Doe, who was then compelled to remove her clothing and subjected to a warrantless body search.

The facts of this case bear no resemblance whatsoever to the facts in *Doe.* In the present case, the canine sniff was conducted not on a person—much less a grade school student—but on a mail parcel in the possession of the United States Postal Service. In addition, the canine sniff conducted in this case, in contrast to the use of the narcotics detection dog in *Doe,* was predicated upon a reasonable and particularized suspicion that

The defendant relies primarily on *United States* v. *Thomas*, 757 F.2d 1359 (2d Cir. 1985), cert. denied, 474 U.S. 819, 106 S. Ct. 66, 88 L. Ed. 2d 54 (1985), and *Commonwealth* v. *Martin*, supra, 534 Pa. 136, to support his claim that the canine sniff of his parcel required a search warrant based upon probable cause. In *Thomas*, the Court of Appeals for the Second Circuit concluded that a canine sniff conducted outside the defendant's apartment constituted an unreasonable search in violation of the fourth amendment and, therefore, that the warrant authorizing the search of the apartment was defective because it was predicated upon the fact that the dog had alerted to the presence of drugs. *United States* v. *Thomas*, supra, 1366–67. The court distinguished the case before it from *United States* v. *Place*, supra, 462 U.S. 696, concluding that because an individual has a heightened privacy interest in his or her dwelling place, the canine sniff technique is more intrusive of a person's privacy rights when it is employed at one's home than when it is used in a public airport.[21] *United States* v. *Thomas*, supra, 1366.

the defendant's parcel contained illegal drugs. Furthermore, the postal inspector in the present case, unlike the school officials in *Doe*, obtained a search warrant issued upon probable cause prior to conducting a full-blown, invasive search of the mail parcel's contents. Finally, the defendant has never challenged the accuracy of the canine sniff technique, either in the trial court or in this court. In light of the vast and obvious differences between this case and *Doe*, we firmly reject the dissent's suggestion that *Doe* has any relevance to this case.

[21] The validity of the *Thomas* decision has been challenged in light of *Place* and its progeny. See, e.g., *United States* v. *Lingenfelter*, 997 F.2d 632, 638–39 (9th Cir. 1993) (court expressly rejected reasoning of *Thomas* in concluding that canine sniff of commercial warehouse is not search requiring any level of suspicion); *United States* v. *Colyer*, 878 F.2d 469, 475–76, 477–79 (D.C. Cir. 1989) (questioning reasoning of *Thomas* in concluding that canine sniff of hallway outside sleeper car of train is not search requiring any level of suspicion); see also *United States* v. *Vasquez*, 909 F.2d 235, 238 (7th Cir. 1990) (reasonable suspicion not needed to conduct canine sniff of private garage from public alley); *United States* v. *Whitehead*, 849 F.2d 849, 855–58 (4th Cir.), cert. denied, 488 U.S. 983, 109 S. Ct. 534, 102 L. Ed. 2d 566 (1988) (canine sniff of sleeping compartment on train is not search requiring any level of suspicion).

Similarly, in *Martin*, the Supreme Court of Pennsylvania concluded that probable cause was required under the Pennsylvania constitution before the police could conduct a canine sniff of a satchel being carried by a suspected drug dealer. *Commonwealth* v. *Martin*, supra, 534 Pa. 143. Previously, in *Commonwealth* v. *Johnston*, supra, 515 Pa. 465–66, the Pennsylvania Supreme Court had concluded that a canine sniff for the presence of drugs in a storage locker was a search for state constitutional purposes requiring reasonable and articulable suspicion. In *Martin*, the court distinguished *Johnston* as involving the use of a canine sniff to search a place rather than a person. *Commonwealth* v. *Martin*, supra, 142–43. Relying on the fact that the defendant had been carrying the satchel when the police detained him and seized the bag for the purpose of subjecting it to the canine sniff, the court in *Martin*, noting that "an invasion of one's person is, in the usual case, [a] more severe intrusion on one's privacy interest than an invasion of one's property," concluded that the search was subject to the higher standard of probable cause. Id. Because both *Thomas* and *Martin* are based on the heightened privacy interests that pertain to one's house or person, neither case advances the defendant's claim that a prior judicial determination of probable cause is required for a canine sniff of a parcel placed in the mail.[22] See, e.g., *United States* v. *Sklar*, supra, 721 F. Sup. 14 ("the [c]ourt is convinced that the privacy interest asserted by [the defendant in his Express Mail package] is more akin to that suggested by the [United

[22] The dissent suggests that the reason why the federal authorities referred the defendant's case to the state for prosecution is because the examination of a mail parcel by a narcotics detection dog would be unlikely to pass muster under *United States* v. *Thomas*, supra, 757 F.2d 1359. This hypothesis is entirely unsupported by either the record or the holding in *Thomas*. Indeed, a far more plausible explanation for the referral is that the quantity of marijuana found in the defendant's parcel did not meet federal prosecutorial guidelines.

States] Supreme Court in *Place* [luggage] [rather] than that discussed by the Second Circuit in *Thomas* [apartment]"); *State* v. *Phaneuf*, 597 A.2d 55, 58 (Me. 1991) ("[w]e reject [the defendant's] contention that the fourth amendment creates a *heightened* expectation of privacy in the mail akin to that in one's domicile" [emphasis in original]).

The defendant also maintains that his claim finds support in a number of United States Supreme Court and United States Court of Appeals cases recognizing a right to privacy in letters or parcels sent through the mail.[23] We agree with the defendant that he retained a legitimate expectation of privacy, under both the state and the federal constitutions, in the parcel of mail that Lambert caused to be subjected to the canine sniff. See *Washington* v. *Meachum*, 238 Conn. 692, 723, 680 A.2d 262 (1996) (article first, § 7, requires determination of whether party claiming infringement of right to privacy has manifested subjective expectation of privacy and, if so, whether that expectation is one society is prepared

---

[23] See *United States* v. *Van Leeuwen*, 397 U.S. 249, 251, 90 S. Ct. 1029, 25 L. Ed. 2d 282 (1970) ("[i]t has been long held that first-class mail such as letters and sealed packages subject to letter postage—as distinguished from newspapers, magazines, pamphlets, and other printed matter—is free from inspection by postal authorities, except in the manner provided by the [f]ourth [a]mendment"); *Ex parte Jackson*, 96 U.S. 727, 733, 24 L. Ed. 877 (1878) ("[t]he constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household"); *United States* v. *Huie*, 593 F.2d 14, 15 (5th Cir. 1979) (recognizing reasonable expectation of privacy held by sender and recipient of mail in contents of sealed mailing); *United States* v. *Choate*, 576 F.2d 165, 174 (9th Cir.), cert. denied, 439 U.S. 953, 99 S. Ct. 350, 58 L. Ed. 2d 344 (1978) ("it is settled that the [f]ourth [a]mendment's protection against 'unreasonable searches and seizures' protects a citizen against the warrantless opening of sealed letters and packages addressed to him in order to examine the contents").

to recognize as reasonable); *State* v. *Joyce*, 229 Conn. 10, 20, 639 A.2d 1007 (1994) (same). The cases cited by the defendant, however, were all decided before *Place* and contemplate a warrantless opening of the mail by the police to inspect its contents, rather than an examination of the air outside the parcel by a trained narcotics detection dog.[24] Because the defendant's privacy rights in his parcel derive primarily from the recognized community interest in ensuring that the state does not intrude unreasonably upon the contents of such items, we reject the defendant's claim that the external, olfactory examination of his parcel by a trained narcotics detection dog entitled him to the same level of constitutional protection to which he would have been entitled had the police sought to open and inspect the parcel. Accordingly, we are satisfied that even if a canine sniff examination of a mail parcel in the possession of the United States Postal Service implicates our state constitutional prohibition against unreasonable searches, the

---

[24] Two decisions of this court cited by the defendant, *State* v. *Joyce*, supra, 229 Conn. 10 (warrantless chemical analysis of defendant's clothing constituted unreasonable search in violation of state constitution), and *State* v. *Mooney*, 218 Conn. 85, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991) (warrantless search of homeless defendant's duffel bag and cardboard box that defendant both regarded and utilized as home violated fourth amendment), are also inapposite to this case because neither involved the use of a trained narcotics detection dog to examine the outside of a package lawfully seized for that limited purpose.

Moreover, we disagree with the dissent's equation of the canine sniff in this case with the use of the "vapor machine designed to detect the chemical composition of odors" in *State* v. *Joyce*, supra, 229 Conn. 10. Indeed, in *Joyce*, we expressly distinguished the chemical analysis conducted in that case from the canine sniff employed in *United States* v. *Place*, supra, 462 U.S. 696, stating that *Place* "turn[s] on the fact that the [canine sniff] employed detect[s] only the presence of contraband narcotics, [while] . . . the gas chromatograph test is not designed to detect the presence of contraband, and in fact detects the presence and identity of many organic substances." (Citations omitted.) *State* v. *Joyce*, supra, 24 n.17. Although we agree that the use of the canine sniff technique, like most other investigative methods, is not infallible, we disagree with the dissent's unsupported assertion that "a dog's sniff can detect many other private facts."

use of the technique was permissible in this case because it was minimally, if at all, intrusive of the defendant's legitimate privacy rights, and the officer conducting the canine sniff had a reasonable and articulable suspicion that the parcel contained illegal drugs.[25] We therefore reject the defendant's claim that the trial court improperly denied his motion to suppress the marijuana seized from his automobile.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and PETERS, Js., concurred.

BERDON, J., dissenting. The majority's decision today, which allows the police to conduct a search of a person's personal effects for contraband by way of the sniff of a dog, dangerously leads us down a path that undermines the foundation of article first, § 7, of our state constitution prohibiting unreasonable searches and seizures. The court concludes that the police, under our state constitution, are entitled to invade the privacy of a person by conducting a search

---

[25] The dissent incorrectly states that our decision "stands the holding in *Terry* [v. *Ohio*, supra, 392 U.S. 1,] on its head." A canine sniff of the air surrounding a piece of mail reasonably suspected of containing contraband is less an invasion of the defendant's privacy interest in his parcel than is the brief investigatory detention and weapons patdown of an individual who the police reasonably suspect of engaging in criminal activity, a police practice that is permitted under both the federal and the state constitutions. See footnote 16. Although the canine sniff of a mail parcel in the possession of the United States Postal Service does not involve the exigencies inherent in a *Terry* stop, the unintrusive nature of the canine sniff, coupled with the state's legitimate law enforcement objectives, leads us inexorably to the conclusion that any reasonable expectation of privacy that the defendant may have in the area to be examined, namely, the air surrounding his parcel, is satisfied by a showing of reasonable and articulable suspicion.

Finally, the dissent also characterizes our decision as "reach[ing] an absurd result." Though such an assertion hardly merits a response, we simply reiterate that the conclusion reached by the dissent has been rejected by each and every federal and state court that has considered the use of the canine sniff technique on a parcel of mail.

without probable cause when they have merely a reasonable and articulable suspicion that a parcel of mail contains contraband. In reaching that conclusion, the majority fails to provide any significant analysis under our state constitution and stands the holding in *Terry*[1] on its head. The majority's perfunctory application of our state constitutional guarantee loses sight of the fundamental purpose of the protection—the right of privacy. Like the fourth amendment to our federal constitution, article first, § 7, of the Connecticut constitution marks that right "as one of the unique values of our civilization . . . ." *McDonald* v. *United States*, 335 U.S. 451, 453, 69 S. Ct. 191, 93 L. Ed. 153 (1948).

The facts of this case are not in dispute. The postal inspector testified at the suppression hearing that the parcel in question in this case exhibited a number of characteristics of a drug package profile. The characteristics that the postal inspector considered to support his reasonable and articulable suspicion that it contained narcotics were: (1) the edges of the package were taped to seal all openings; (2) the return address was fictitious; (3) the address labels of the package were handwritten; (4) it came from a source state, i.e., California; (5) the size and shape of the package were consistent with one that contained marijuana; and (6) the package was sent via Express Mail through the United States postal service.[2] These characteristics, plus the sniff by Zak, a

---

[1] *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2] Although the defendant does not challenge the finding that there was a reasonable and articulable suspicion to subject the package to the sniff, I have serious reservations about that finding in this case. Surely, the size, shape and outward appearance of the package—that it was heavily taped, that the labels were handwritten, that it originated from California, and that it was sent via Express Mail—are all innocuous factors whether singularly or collectively considered. Millions of packages meet these criteria. In this case, the only feature noticed by the postal inspector that could give rise to a question would be the fictitious return address, and that alone should not constitute a reasonable and articulable suspicion.

police dog, were the basis upon which the postal inspector determined that he had probable cause to believe that the parcel contained marijuana and upon which he secured a search warrant from a federal magistrate in order to open the parcel.[3] The parcel, addressed to the defendant, Jamison Martin Waz, when opened pursuant to the search warrant, contained one half pound of marijuana.

I

This court has previously made clear that our state constitution may provide rights greater than those established by the federal constitution. *State* v. *Morales*, 232 Conn. 707, 716–17, 657 A.2d 585 (1995). Nevertheless, in giving independent meaning to the state constitution, we not only rely upon our own precedent and that of our sister states; *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992); but our analysis may also build upon federal precedent "that appropriately illuminate[s] open textured provisions in our own organic document . . . ." *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990). Whether we apply our own precedent or view the state's search and seizure clause through the lens of federal precedent, the search by a canine sniff of the parcel addressed to the defendant, and sent by Express Mail, violated the defendant's state constitutional rights.

In order to avoid determining whether a dog sniff is a search under our state constitution, the majority assumes for purposes of its decision that it is a search. Notwithstanding this assumption in which the majority purports generously to indulge us, a dog sniff of the defendant's sealed parcel sent via Express Mail is a search to no lesser extent than the "sniff" by a vapor

---

[3] For the purposes of the analysis of this case, the warrant obtained by the postal inspector is irrelevant because the majority, for the purposes of this case, concedes that the dog sniff was the search.

machine designed to detect the chemical composition of odors, which we recently held constituted a search in *State* v. *Joyce*, 229 Conn. 10, 23–24, 639 A.2d 1007 (1994).

In making this determination, it must first be determined whether the defendant had a reasonable expectation of privacy in his sealed parcel being sent through the mail. Although the majority seems to minimize the importance of the privacy interests involved in this case, the United States Supreme Court has equated those interests to those that a person has in his or her home. "Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, *as if they were retained by the parties forwarding them in their own domiciles*. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, *wherever they may be*. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the fourth amendment of the Constitution." (Emphasis added.) *Ex parte Jackson*, 96 U.S. 727, 733, 24 L. Ed. 877 (1877); see also *United States* v. *Van Leeuwen*, 397 U.S. 249, 251, 90 S. Ct. 1029, 25 L. Ed. 2d 282 (1970) (citing *Ex parte Jackson* and stating that "[i]t has long been held that first-class mail such as letters and sealed packages subject to letter postage—as distinguished from newspapers, magazines, pamphlets, and other printed matter—is free from inspection by postal

authorities, except in the manner provided by the Fourth Amendment"); *United States* v. *Huie*, 593 F.2d 14, 15 (5th Cir. 1979) (implicitly recognizing reasonable expectation of privacy in contents of sealed mailing); *United States* v. *Choate*, 576 F.2d 165, 174 (9th Cir.), cert. denied, 439 U.S. 953, 99 S. Ct. 350, 58 L. Ed. 2d 344 (1978) (citing *Ex parte Jackson* for proposition that fourth amendment's "protection against 'unreasonable searches and seizures' protects a citizen against the warrantless opening of sealed letters and packages addressed to him in order to examine the contents").[4] Indeed, this court recognized this right of privacy with respect to sealed mail in *State* v. *Mooney*, 218 Conn. 85, 103, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). Clearly, the state constitution embodies this right of privacy—ranking private mail high on the list of important privacy rights.

In *Joyce*, we stated, with respect to the "sniff" of odors by a vapor detection machine (a chemical analysis of clothing through gas chromatography), that a determination of whether the police action constituted a search was largely answered by the defendant's expectation of privacy in the object. *State* v. *Joyce*, supra, 229 Conn. 18–19. Because there is such an expectation of privacy in a person's parcels sent by mail, an expectation that is heightened and equivalent to that of the home, it is clear, that, like the vapor detection machine in *Joyce*, a trained dog's sniff of the odors emitted from a parcel (that cannot be detected by a human being's

---

[4] I can understand why the federal government turned this case over for state prosecution, notwithstanding that the investigation was conducted by federal postal inspectors and a federal warrant was secured to search the package that was in the mail. Under *United States* v. *Thomas*, 757 F.2d 1359, 1367 (2d Cir.), cert. denied, 474 U.S. 819, 106 S. Ct. 66, 88 L. Ed. 2d 54 (1985), where the Second Circuit Court of Appeals found that the canine sniff of the exterior of a home constituted an unconstitutional search, it is questionable whether the canine sniff of mail for contraband would pass Second Circuit muster.

sense of smell) is a search. Indeed, just as in *Joyce*, it is clear that a dog's sniff can detect many other private facts.[5] Nevertheless, I need not dwell on this because, at least for the purposes of this case, the majority concedes that the canine sniff was such a search.

[5] It is obvious to me that the majority's confusion emanates from its reliance on dicta in *United States* v. *Place*, 462 U.S. 696, 706–707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). The dicta in *Place* indicated that the dog sniff of the luggage located in a public place was permissible because, under the circumstances of that case, it was not a search under the federal constitution. Id. The majority, in its reliance on *Place*, overlooks its concession in this case that the dog sniff of the parcel was a search.

In *Place*, the court relied primarily upon the unique nature of the dog sniff, which only discloses narcotics. Id., 707. These dog sniffs, however, do not always disclose the presence or absence of narcotics. One commentator has stated that "[t]his is because these dogs are not fool-proof and thus their use sometimes leads to serious intrusions upon the privacy of innocent people. The classic example is *Doe* v. *Renfrow*, [475 F. Sup. 1012 (N.D. Ind. 1979), aff'd in part, 631 F.2d 91 (7th Cir. 1980)] where such a dog 'alerted' to a 13-year-old girl during a school-wide 'sniff' of all students. This dog continued to 'alert' even after she emptied her pockets, so she was then subjected to a nude search by two women; no drugs were found, but *it was later discovered that she had been playing that morning with her dog, who was in heat.* This was not an isolated instance of error. The dogs used in this undertaking alerted to some fifty students, only 17 of whom were found to be in possession of drugs." (Emphasis added.) 1 W. LaFave, Search and Seizure (3d Ed. 1996) § 2.2 (f), p. 455.

The outrageous indignity that the thirteen year old girl was put through was not only as a result of the complete body search, but also the initial sniff search of her person. Although not raised in this case, it clearly demonstrates the unreliability of the dog sniff. I take it from footnote 20 of the majority opinion in this case that the majority would at least conclude that a dog sniff search of the person, under our state constitution, would be unreasonable.

In addition, although the majority in *Joyce* did not decide whether a dog sniff was a search under the state constitution, the court pointed out what it thought was a distinction between the dog sniff and the vapor analysis of the clothing. *State* v. *Joyce*, supra, 229 Conn. 24 n.17. The court stated that the dog sniff detected "only the presence of contraband narcotics, and the possession of narcotics is not a 'private fact' under the fourth amendment." Id. In *Joyce*, we were obviously wrong with respect to the dog sniff. See *Doe* v. *Renfrow*, supra, 475 F. Sup. 1012; see also *United States* v. *$639,558.00 in United States Currency*, 955 F.2d 712, 714 n.2 (D.C. Cir. 1992) (indicating that dog alerted to traces of cocaine adhering to currency in traveler's luggage, but no cocaine was found, and noting estimates that 75 to 97 percent of all currency contains sufficient traces of

## II

Once it has been determined that the dog sniff constituted a search, under either the state or federal constitution, this case should end because the postal inspector did not have probable cause based upon the characteristics of the package to conduct that search. The probable cause that the postal inspector relied upon in order to secure the federal search warrant was not based on a reasonable and articulable suspicion, but, rather, was based on what the majority concedes is the search in this case—that is, the dog sniff. I know of no Connecticut case under the state constitution, and indeed, the majority is unable to point to any federal cases under the United States constitution, that has allowed a search for *contraband* without probable cause, but merely based upon a reasonable and articulable suspicion.

It is also clear that, under our state constitution, a warrant to search is required under the circumstances of this case. In *State* v. *Joyce*, supra, 229 Conn. 24–25, the majority of an en banc court rejected the argument that if a search is "reasonable," it passes state constitutional muster. The majority in *Joyce* held that under "the state constitution, all warrantless searches, whether or not the police have *probable cause* to believe that a crime was committed, are per se unreasonable, unless they fall within one of a few specifically established and well delineated exceptions to the warrant requirement." (Emphasis added.) Id. Indeed, in *State* v. *Miller*, 227 Conn. 363, 382–83, 630 A.2d 1315 (1993), former Chief Justice Peters, writing for a majority of the court, stated: "Our [state] constitutional preference for warrants

---

cocaine to alert trained dogs); 1 W. LaFave, supra, § 2.2 (f), p. 450 n.239 ("it sometimes happens in practice that a drug dog alert will lead to nothing but currency"). "[A] court considering whether a dog sniff provides probable cause . . . may have to take into account the possibility that the dog signalled only the presence of money, not drugs." *United States* v. *$639,558.00 in United States Currency*, supra, 714 n.2.

reflects a goal of protecting citizens from unjustified police intrusions by interposing a neutral decisionmaker between the police and the object of the proposed search. See *State* v. *Diaz*, [226 Conn. 514, 546–47, 627 A.2d 567 (1993)]; cf. *State* v. *Jackson*, 162 Conn. 440, 444, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972) (purpose of fourth amendment is to require neutral and detached magistrate to make probable cause determination). Accordingly, a search is invalid if the police, without a justification rooted in a valid exception to the warrant requirement, have relied upon only their own probable cause evaluation, even if later found to be correct, before searching. We thus read the two clauses of article first, § 7, in conjunction—a warrantless search is per se unreasonable, justified only by limited exceptions—rather than in disjunction—a search is valid if it is reasonable, and the presence of a warrant is just one factor in the determination of reasonableness. Cf., e.g., *State* v. *Badgett*, 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986) (construing fourth amendment to bar warrantless searches as per se unreasonable); see generally *State* v. *Larocco*, 794 P.2d 460, 467–69 (Utah 1990) (extensive discussion of consequences of reading two clauses of fourth amendment in conjunction and in disfunction); R. Bloom, 'Warrant Requirement—The Burger Court Approach,' 53 U. Colo. L. Rev. 691 (1982)."

In *Miller*, we delineated those limited exceptions under the state constitution. "Our constitutional preference for warrants is overcome only in specific and limited circumstances. See, e.g., *State* v. *Geisler*, supra, [222 Conn.] 691 (recognizing emergency exception as matter of state constitutional law); *State* v. *Delossantos*, 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989) (recognizing exception for search incident to arrest as matter

of state constitutional law); *State* v. *Dukes*, [209 Conn. 98, 126, 547 A.2d 10 (1988)] (recognizing automobile exception on highway as matter of state constitutional law). These recognized exceptions derive primarily from acknowledged interests in protecting the safety of the police and the public and in preserving evidence." *State* v. *Miller*, supra, 227 Conn. 383.

Specifically, within the context of the fourth amendment, this court made it absolutely clear that a search warrant is required for a search of sealed mail: " 'Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; *warrantless searches of such effects are presumptively unreasonable.* Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package.' " (Emphasis added.) *State* v. *Mooney*, supra, 218 Conn. 103, quoting *United States* v. *Jacobsen*, 466 U.S. 109, 114, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).

In my view, *Joyce* is also dispositive of this case. In *Joyce*, the police took legal possession of the defendant's clothing left at the scene of the fire, which was removed from the defendant because he was severely burned. *State* v. *Joyce*, supra, 229 Conn. 12–13. The state sent the clothing to its laboratory to determine whether they contained odors of an accelerant. Id., 14. This was accomplished merely by a noninvasive method of heating the clothing to vaporize any organic matters. Id., 14–15. The vapors were then run through a machine in order to identify their substance. Id., 15. In suppressing the results of the machine sniffing test under our state constitution, we concluded: First, such a "chemical test [of the vapors by the machine], capable of determining a multitude of private facts about an individual, constituted a search under article first, § 7,

of the state constitution." Id., 24. Second, we stated that "the state is unable to identify any exception to the warrant requirement that could encompass the warrantless search of the defendant's clothes." Id., 27. The only difference between a dog sniff and a vapor sniff in the chemical laboratory is that in all probability the chemical detection machine is substantially more accurate than the canine nose.

There is nothing in the record in this case that even comes close to a recognized exception to the warrant requirement. Furthermore, there is nothing in the record that would support probable cause even if that was sufficient.

### III

Notwithstanding *Miller*, *Mooney* and *Joyce*, the majority relies on other jurisdictions that have concluded under their own state constitutions that even if the canine sniff is a search, it passes state constitutional muster "because [1] it was minimally, if at all, intrusive of the defendant's legitimate privacy rights, and [2] the officer conducting the canine sniff had a reasonable and articulable suspicion that the parcel contained illegal drugs." In essence, the majority opinion and those jurisdictions that are cited in the opinion rely on *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Under our state constitution, we have adopted *Terry*[6]—that is, "a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. . . . If, during the course of a lawful investigatory detention, the officer reasonably believes that the detained individual might be armed and dangerous, the officer may

---

[6] See *State* v. *Oquendo*, 223 Conn. 635, 654, 613 A.2d 1300 (1992); *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990).

undertake a patdown search of the individual to discover weapons." (Citations omitted.) *State* v. *Trine*, 236 Conn. 216, 223–24, 673 A.2d 1098 (1996), citing *Terry* v. *Ohio*, supra, 392 U.S. 21, 24. *Terry*, however, does not give authority to search for contraband.[7] It merely authorizes a patdown search in order for the police officer to protect himself and others. Indeed, in *Terry*, the court carefully stated that "[w]e merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear from his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry* v. *Ohio*, supra, 30.

In the present case, no police officer or any other person was at risk. But even if that were not the case, the search conducted by the police through the dog sniff was not performed to protect the safety of anyone. Rather, the search was to detect marijuana. The search simply cannot pass muster under our state constitution.

---

[7] The majority in this case seems to justify the search on the basis that it is not as intrusive as the *Terry* search. See footnote 25 of the majority opinion. The majority fails to understand that we have tolerated the *Terry search* not as an aid for the investigative purposes of law enforcement, but solely to protect the police officer and others while the police are performing those duties. A *Terry* search would never pass federal or state constitutional muster if the police use it as a pretext to get in through the back door what it could not get through the front door under the constitutional protections. If this were so, the *Terry* search could easily be expanded to become the weapon of a police state.

If it is assumed that the sniff is a search for federal constitutional analysis, it would then also be invalid under the federal constitution. See *United States* v. *Place*, 462 U.S. 696, 706, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) ("[o]bviously, if [the] investigative procedure is itself a search requiring probable cause, the initial seizure of [the] luggage for the purpose of subjecting it to the sniff test—no matter how brief—could not be justified on less than probable cause").

The majority, by applying the principles of a *Terry* search to a search for contraband, reaches an absurd result that undermines the state's constitutional search and seizure jurisprudence that this court has developed over the last ten years.

Accordingly, I would reverse the trial court's judgment and remand the case with direction to suppress the evidence illegally obtained from the parcel.