STATE OF HAWAII, Plaintiff-Appellant, *v.* ALAN SNITKIN, Defendant-Appellee

NO. 8942

CRIMINAL NO. 57179

MAY 17, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY HAYASHI, J.

This case presents the question whether the police may use a trained narcotics detection dog to sniff all packages in a cargo holding room of a private mail carrier, known to drug enforcement officials as a high volume drug conduit, with the carrier's permission but without the permission of the senders or addressees. We .hold the dog's sniff was not a search within the purview of the Fourth Amendment or article I, section 7 of the Hawaii constitution. Moreover, we find the police .action reasonable because the important government interest in detecting and preventing drug traffic via a known, high volume carrier outweighs the minimal individual interest in freedom from a narcotics dog's sniff of the packages.

On March 8, 1982, Canine Enforcement Officer Jerome Tomaino, a member of the United States Customs Service Drug Enforcement Agency (D.E.A.) Task Force assigned to Honolulu International Airport, brought his dog "Donker" to the Federal Express office at the airport. With the permission of Federal Ex-

press, Tomaino let Donker run loose in the package holding area. Donker stopped at a package addressed to Alan Snitkin and scratched it, signaling the possible presence of drugs. None of the humans present smelled contraband.

Based solely on Donker's actions, the police obtained a search warrant, opened the package, and found cocaine. They then re-sealed the package, allowed Snitkin to pick it up, and arrested him as he drove away.

Tomaino had no reason to suspect any particular package at the Federal Express office contained drugs. He had brought Donker to make a routine survey of the office as he did every day because, in his words, "Federal Express is known actively for drugs." According to Tomaino, Federal Express is the number one air cargo carrier used by Hawaiian drug traffickers. Of the 179 D.E.A. Task Force narcotics recoveries at the Honolulu International Airport since October, 1979 approximately one-quarter have been made at the Federal Express office.

Federal Express officials cooperate freely with drug enforcement officers. Tomaino testified that he simply calls up to ask when the freight comes in and then brings Donker to the cargo room to sniff the packages.

Tomaino has handled Donker for four years and three months. Initially, both received fifteen weeks of training at the United States Customs Service canine center in Virginia. Donker passed the course and received his narcotics certification. In his career, Donker has correctly sniffed out hidden drugs, including marijuana, heroin, cocaine, and hashish, 325 times. At least 175 of Donker's strikes have been made in Hawaii and of those approximately 30 at the Federal Express office at the Honolulu International Airport.

On June 16, 1982, the Oahu grand jury indicted Snitkin on one count of Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 712-1242(1)(b)(i). On October 5, 1982, Snitkin filed a motion to suppress the cocaine on the ground that Donker's actions constituted an illegal search. At the suppression hearing the trial judge granted the motion, citing *State v. Groves*, 65 Haw. 104, 649 P.2d 366 (1982). In the trial judge's view, the *Groves* opinion prohibited routine dog sniffs. The State appeals his ruling.

### I.

The first issue raised by the State is whether Snitkin may challenge the constitutionality of Donker's actions. We find this contention without merit. *See, United States v. Jacobsen,* \_\_\_\_ U.S. \_\_\_\_, 52 U.S.L.W. 4414, 4415 (No. 82-1167 April 12, 1984).

### II.

We begin our discussion of the propriety of Donker's actions with our recent opinion in *State v. Groves,* 65 Haw. 104, 649 P.2d 366 (1982). In *Groves* we recognized that "people normally possess an expectation of privacy in luggage," 65 Haw. at 110, 649 P.2d at 371, but not in the airspace surrounding it. 65 Haw. at 112, 649 P.2d at 372. Thus, we held a narcotics detection dog's sniff of a suitcase was not a Fourth Amendment search. *Id.* The United States Supreme Court has since reached the same result in *United States v. Place,* \_\_\_\_ U.S. \_\_\_\_, 103 S. Ct. 2637, 2644-45 (1983).

The novelty of the present case is how Donker's detection talents were used. In *Groves,* the marijuana found in the closed suitcase was first smelled by a human, and only then was the dog used to sniff the suspected article. 65 Haw. at 105-06, 649 P.2d at 368. Likewise, in *Place* the defendant's luggage had been isolated by the police before the dog was used to verify their reasonable suspicion that it contained contraband. 103 S. Ct. at 2640. Here, although from past statistics Officer Tomaino was aware that a number of packages carried by Federal Express contain drugs, he did not suspect Snitkin's package until Donker isolated it. Snitkin contends the lack of prior focus on his package renders Donker's actions the sort of general exploratory search proscribed by the Fourth Amendment and article I, section 7 of our constitution.

We disagree. Snitkin's argument loses sight of our paramount holding in *Groves:* a narcotics dog's sniff of the airspace around a closed container is not a Fourth Amendment or article I, section 7 "search." 65 Haw. at 112, 649 P.2d at 372. Here, the State's use of Donker to identify rather than verify packages containing contraband did not convert Donker's actions into a "search" of constitutional dimension. Only the surrounding airspace was examined, not the package's contents. Moreover, in *Groves* we expressly rejected the suggestion of *United States v. Beale,* 674 F.2d 1327 (9th

Cir. 1982), that the State may only employ drug detection dogs when it has a prior reasonable suspicion of criminal activity, 65 Haw. at 113, 649 P.2d at 371, and the United States Supreme Court has followed suit. *United States v. Beale,* 462 U.S. ____, 103 S. Ct. 3529, 77 L. Ed. 2d 1382 (1983). Thus, we hold that a prior suspicion of Snitkin's package was not an absolute prerequisite to the State's use of Donker to ascertain whether it smelled of contraband. *Accord, United States v. Race,* 529 F.2d 12, 14 & n.2 (1st Cir. 1976) (dog sniff of airline cargo warehouse proper); *State v. Morrow,* 128 Ariz. 309, 625 P.2d 898 (1981) (dog sniff of all airplane luggage proper); *People v. Mayberry,* 31 Cal. 3d 335, 182 Cal. Rptr. 617, 644 P.2d 810 (1982) (dog sniff of all inbound flight luggage proper); *State v. Wolohan,* 23 Wash. App. 813, 598 P.2d 421 (1979) (dog sniff of all bus cargo proper).

Nevertheless, we do not consider the Fourth Amendment and article I, section 7 to be irrelevant to the police actions reviewed here. Although in *Groves* we held a dog sniff is not a search, we also noted that we would not countenance unreasonable or abusive uses of narcotics dogs. 65 Haw. at 113, 649 P.2d at 372. We now hold that the reasonableness of the dog's use in the particular circumstances should be determined by balancing the State's interest in using the dog against the individual's interest in freedom from unreasonable government intrusions. *See, United States v. Jacobsen,* ____ U.S. at ____, 52 U.S.L.W. at 4418; *Michigan v. Long,* 463 U.S. ____, 103 S. Ct. 3469, 3481 (1983); *Terry v. Ohio,* 392 U.S. 1, 20-21 (1968). Balancing the interests present in this case convinces us that the State's use of Donker to sniff all packages in the cargo room was reasonable.

The State interest in detecting and preventing drug traffic via a known conduit is a strong one. *Place,* 103 S. Ct. at 2642 (citing *United States v. Mendenhall,* 446 U.S. 544, 561 (1980)). Here, the police had statistical knowledge that approximately one-fourth of the illegal drugs brought into Hawaii by air are transported via Federal Express. Their interest in detecting drugs concealed in Federal Express packages was therefore substantial and specific.

In contrast, Snitkin's interest in freedom from a narcotics dog's sniff of the airspace around his package was minimal. Donker's sniff of the package holding room posed little threat of harassment, intimidation, or embarrassment to senders or recipients. *See,*

*Groves,* 65 Haw. at 113, 649 P.2d at 372. Donker's actions were not public, did not involve human confrontation,[1] and were carried out with much less discretion than could be accomplished by human officers. The packages were not detained. *Compare, Place,* 103 S. Ct. at 2646 (ninety-minute detention of luggage unreasonable). In short, as noted in *Place,* "we are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." 103 S. Ct. at 2644.

We conclude the State's interest in detecting private mail drug traffic via Federal Express clearly outweighed any sender's or recipient's interest in the airspace around his or her package, and therefore the State's use of Donker to sniff the package holding area was reasonable. At the same time, however, we emphasize that, absent exigent circumstances, consent, or some other well established warrant exception, a valid search warrant is still required to open private containers identified by a drug detection dog. *See, Mayberry,* 31 Cal. 3d at 342, 182 Cal. Rptr. at 621, 644 P.2d at 814. Here, the police secured a warrant before opening Snitkin's package. The suppression order is therefore reversed.

*Lila B. LeDuc (Arthur E. Ross* on the reply brief, *Steven T. Barta,* Law Clerk, with him on the brief) Deputy Prosecuting Attorneys for plaintiff-appellant.

*Christopher D. Ferrara (Robinson & Ferrara* of counsel) for defendant-appellee.

---

[1] The lack of human confrontation is an important distinguishing factor. While drug detection dogs trained by the United States Customs Service are extremely accurate in detecting contraband concealed in inanimate containers, *see,* Note, 13 SAN DIEGO L. REV. 410, 414-15 & n.25 (1976); 1 LA FAVE, *Search and Seizure* § 2.2(f) at 288 (1978), they are evidently less reliable when sniffing humans. *See, Horton v. Goose Creek Independent School District,* 677 F.2d 471 (5th Cir. 1982), *cert. denied,* 103 S. Ct. 3536 (1983) (two students identified by dog carried no contraband); *Doe v. Renfrow,* 475 F. Supp. 1012 (N.D. Ind. 1979), *modified,* 631 F.2d 91 (7th Cir. 1980), *cert. denied,* 451 U.S. 1022 (1981) (girl mistakenly identified by dog and subjected to strip search; detection dog had reacted to scent of girl's own dog in heat). The present case does not involve human confrontation and we leave to another day and a more appropriate factual record the decision whether or when it may be reasonable to use dogs to discover contraband carried by people, and whether the dog's accuracy with humans should affect the reasonableness of the State's use of the dog, or the magistrate's determination of probable cause to issue a search warrant. *See,* 1 LA FAVE, *Search and Seizure* § 2.2(f) (Supp. 1984) at 82-83.