**Electronically Filed
Supreme Court
SCWC-16-0000003
09-JUN-2020
11:24 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee/Cross-Appellant,

vs.

LARRY IKIMAKA, Petitioner/Defendant-Appellant/Cross-Appellee,
LIANE HENDERSON and CHERI NUMAZAWA,
Defendant-Appellee/Cross-Appellee.

_____

SCWC-16-0000003

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000003; CR. NO. 14-1-0306)

JUNE 9, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY MCKENNA, J.

## I.  Introduction

This appeal arises from the conviction of Larry Ikimaka

("Ikimaka") for one count of promoting a dangerous drug in the

second degree in violation of Hawai'i Revised Statutes ("HRS")

§ 712-1242 (Supp. 2007) and one count of unlawful use of drug paraphernalia in violation of HRS § 329-43.5(a) (Supp. 1988) after a jury trial in the Circuit Court of the Fifth Circuit ("circuit court").[1]

On October 13, 2014, Kauai Police Department ("KPD") received a 911 call from Cheri Numazawa ("Numazawa") alleging Ikimaka had hit her, taken her purse, and driven off in a gold Chevy truck. At around 2:33 a.m., Officer Hansen Hsu ("Officer Hsu") responded to the call. Officer Hsu saw a gold Chevy truck and initiated a traffic stop. Officer Hsu approached the truck, observed Ikimaka in the driver's seat and Liane Henderson ("Henderson") in the passenger's seat, and he had Ikimaka and Henderson exit the truck and sit on the side of the road.

Meanwhile, KPD officers Creighton Tamagawa ("Officer Tamagawa") and Mason Telles ("Officer Telles") attempted to locate Numazawa to get a statement, and they eventually located her after about half an hour. Numazawa told the officers that Ikimaka took her purse, but she did not want to press charges and did not want Ikimaka arrested. Approximately forty minutes after the initial stop, Officer Hsu learned through dispatch that Numazawa had been located and contacted Sergeant Colin Nesbitt ("Sergeant Nesbitt"). Officer Hsu and Sergeant Nesbitt

---

[1]     The Honorable Randal G.B. Valenciano presided.

determined they had probable cause to seize the truck for theft on the grounds it contained Numazawa's purse. They also discussed Numazawa's alleged prior drug history.

Officer Hsu informed Ikimaka and Henderson that KPD was impounding the truck, but that they were not being arrested and were free to go. Henderson left the scene, but Ikimaka chose to stay, and Officer Roldan Agbayani ("Officer Agbayani"), then read Ikimaka his Miranda rights. Ikimaka indicated he did not want to make a statement.

The truck was towed to the KPD evidence warehouse, and Sergeant Nesbitt requested a drug-detecting dog to sniff the outside of the truck. The dog alerted to the presence of drugs. Based on the dog sniff, Officer Hsu obtained a warrant to search the truck for Numazawa's purse and for drugs. Officer Hsu executed the search warrant and found three purses in the truck, all of which contained illegal drugs.

Ikimaka, Henderson, and Numazawa were then arrested and charged for possession of the drugs. No other charges were filed against Ikimaka. Ikimaka filed a motion to suppress, arguing the warrantless seizure of the truck was unreasonable and the dog sniff was a prohibited general exploratory search. The circuit court denied the motion to suppress.

After a joint jury trial with Numazawa,[2] the jury found Ikimaka guilty of both charges.  Numazawa was acquitted. Ikimaka was sentenced to four years of probation with an additional nine months of imprisonment as a condition of probation.

On appeal to the Intermediate Court of Appeals ("ICA"), Ikimaka asserted various errors, including that (1) the State improperly elicited testimony regarding Ikimaka's exercise of his right to remain silent; and (2) Officer Hsu was improperly allowed to speculate on Ikimaka's mental state.[3]  In a memorandum opinion, the ICA affirmed Ikimaka's convictions.  Ikimaka reasserts the questions presented to the ICA in his application for certiorari to this court.[4]

Before addressing two of Ikimaka's questions on certiorari, delineated above, we notice plain error affecting substantial rights with respect to the circuit court's denial of Ikimaka's

---

[2]    Henderson pleaded no contest to the charges against her.

[3]    Ikimaka also asserted he was entitled to a new trial because (3) the State failed to lay the foundation necessary to admit the drug test results; (4) the circuit court improperly admitted hearsay into evidence; (5) the circuit court's jury instruction regarding constructive possession was incomplete; and (6) the circuit court failed to sever Ikimaka's trial from Numazawa's trial.  Ikimaka also asserted that (7), the circuit court erred in failing to enter a judgment of acquittal due to a lack of sufficient evidence supporting his actual or constructive possession of the drugs.  The ICA rejected all of these contentions, and we do not further address them in this opinion.

[4]    Ikimaka reasserts all of the points of error he raised in the ICA, except (5) above, which the ICA ruled was waived pursuant to HRAP Rule 28(b)(7) (2016) because Ikimaka did not provide argument on that point.

motion to suppress.  As the dog sniff conducted by KPD was unrelated to the initial stop and seizure of the truck as evidence of the alleged theft of Numazawa's purse and KPD did not have independent reasonable suspicion to believe the truck driven by Ikimaka contained drugs, the dog sniff violated Ikimaka's constitutional right against unreasonable searches under article I, section 7 of the Hawai'i Constitution.  State v. Alvarez, 138 Hawai'i 173, 378 P.3d 889 (2016) (holding canine screen unreasonable and unlawful expansion of initial traffic detention under the circumstances); State v. Estabillio, 121 Hawai'i 261, 273, 218 P.3d 749, 761 (2009) (holding investigation of defendant's alleged involvement with drugs not reasonably related to the initial stop for traffic offenses).  Thus, Ikimaka's motion to suppress should have been granted as to the drug evidence.

To provide guidance, we also address Ikimaka's first two questions on certiorari.  The deputy prosecuting attorney ("DPA") should not have elicited testimony regarding Ikimaka's exercise of his right to remain silent, and the circuit court erred by admitting into evidence Officer Hsu's lay opinion testimony on Ikimaka's intent and knowledge.  We do not address Ikimaka's remaining questions on certiorari.

We therefore remand this matter to the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Circuit court proceedings

#### 1. Charges

On October 27, 2014, the State filed a complaint against Ikimaka, Henderson,[5] and Numazawa. Ikimaka was charged with one count of promoting a dangerous drug in the second degree in violation of HRS § 712-1242[6] and one count of unlawful use of drug paraphernalia in violation of HRS § 329-43.5(a).[7] Numazawa

---

[5] Henderson entered a plea of no contest. See supra note 2. We do not further discuss the charges against Henderson.

[6] HRS § 712-1242 provides:

> (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
> (a) Possesses twenty-five or more capsules, tablets, ampules, dosage units, or syrettes, containing one or more dangerous drugs; or
> (b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
> (i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers; or
> (ii) One-fourth ounce or more, containing any dangerous drug; or
> (c) Distributes any dangerous drug in any amount, except for methamphetamine.
> (2) Promoting a dangerous drug in the second degree is a class B felony.

[7] HRS § 329-43.5(a) read at the time of the conviction:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-
> (continued . . .)

was charged with one count of promoting a dangerous drug in the third degree in violation of HRS § 712-1243 (Supp. 2004) and one count of unlawful use of drug paraphernalia in violation of HRS § 329-43.5(a).

### 2. Ikimaka's motion to suppress

#### a. Written submissions

On February 20, 2015, Ikimaka filed a pretrial motion to quash search warrant and suppress evidence ("motion to suppress") for all evidence recovered from the truck. Ikimaka argued that the "automobile exception" did not justify the warrantless seizure of the truck because there was no reason to believe the purse might be removed or destroyed. Ikimaka also argued the truck's seizure was unnecessary because he had volunteered to return Numazawa's purse, citing the ICA's holding in State v. Ramos, 93 Hawai'i 502, 513, 6 P.3d 374, 385 (App. 2000), that "governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances."

Ikimaka further maintained that KPD only had probable cause to search the truck for Numazawa's purse, not for drugs. Ikimaka also argued that the dog sniff constituted a "general

_____

(. . . continued)
        660 and, if appropriate as provided in section 706-641,
        fined pursuant to section 706-640.

7

exploratory search" prohibited by State v. Groves, 65 Haw. 104, 649 P.2d 366 (1982).

In its February 25, 2015 opposition memorandum, the State argued KPD had probable cause to believe that Ikimaka had committed theft and that evidence of the theft was in the truck based on Numazawa's 911 call and Ikimaka's statement to police that he had Numazawa's purse in the truck.

The State's submissions also showed that on October 13, 2014, at around 5:39 a.m., Sergeant Nesbitt requested a "canine sniff" on the truck. At around 11:35 a.m., a KPD narcotics detector dog alerted to the presence of narcotics on the passenger's side door of the truck. On October 14, 2014, Officer Hsu's application for a warrant to search the truck, which was registered to a Natasha Lazaro ("Lazaro"), for Numazawa's purse as well as "Methamphetamine, Heroin, Cocaine, Marijuana, and all of its various forms," was approved.

On October 15, 2014, Officer Hsu executed the search warrant on the truck. Officer Hsu found a maroon bag under the driver's seat containing two glass tubes, $1,400 in cash, plastic bags containing white crystalline substances, a digital scale, and an Ace Hardware receipt bearing Ikimaka's name. Officer Hsu also found a black purse on the floor of the passenger's side containing Henderson's driver's license, a plastic bag containing a "green leafy substance resembling

marijuana," and a plastic bag containing a white crystalline substance. He also found a "Dooney and Bourke" purse containing a glass pipe, a digital scale, plastic bags containing white crystalline substances, and IDs bearing Numazawa's name.

The State maintained that KPD was authorized to seize the truck pursuant to the automobile exception, and that exigent circumstances existed because "[i]f police had not seized the vehicle, there was an extremely high risk Ikimaka or Henderson would have moved, removed or destroyed the vehicle and/or evidence." The State also asserted that a dog sniff "of the airspace around a closed container is not a Fourth Amendment or Article I, section 7 search," citing State v. Snitkin, 67 Haw. 168, 171, 681 P.2d 980, 983 (1984), and Groves, 65 Haw. 104, 649 P.2d 366.

### b. Hearing on motion to suppress

At the beginning of the April 2, 2015 hearing, the State took the position that no evidence should be presented on the dog sniff issue because it was "contained within the search warrant." The circuit court agreed that "the review is based on the four corners of the warrant," and stated it was not going to take evidence on the dog sniff. Citing Groves, 65 Haw. 104, 649 P.2d 366 and Snitkin, 67 Haw. 168, 681 P.2d 980, the circuit court found that the dog sniff of the airspace around the car

was appropriate, and it denied the motion to suppress regarding the use of the drug-sniffing dog.

At the hearing, Ikimaka called Officers Hsu, Agbayani, and Telles as witnesses, who testified in relevant part to the following additional facts.

On October 13, 2014 at around 2:33 a.m., Officer Hsu received information from dispatch about a 911 call made by Numazawa alleging that Ikimaka had struck her, taken her purse, and left in a gold Chevy truck from Kamalani Bridge. After stopping Ikimaka, Office Hsu asked Ikimaka and Henderson to exit the truck. It was "raining off and on." At the time Officer Hsu stopped Ikimaka, KPD had not spoken with Numazawa.

After approximately 30 minutes, Officer Tamagawa, who was familiar with Numazawa, and Officer Telles located Numazawa on the beach. The officers spoke with Numazawa, who told them Ikimaka took her purse and that she wanted it back. However, she did not want to press charges and did not want Ikimaka arrested.

After Officer Hsu was informed through dispatch that Numazawa had been located and that Numazawa did not want to press charges, he contacted Sergeant Nesbitt. Officer Hsu and Sergeant Nesbitt determined they had probable cause to seize the truck for theft based on Numazawa's 911 call and her statements to the police. Sergeant Nesbitt also mentioned to Officer Hsu

10

that Numazawa had a prior drug history. Sergeant Nesbitt told Officer Hsu that one reason to seize the truck was Numazawa's drug history, but "the main reason was because of the theft that occurred." The truck's windows were down at the time of seizure. At that point in time, Officer Hsu did not think he had probable cause to seize the truck for drugs.

Ikimaka asked if he could retrieve the purse from his vehicle and return it to Numazawa. Numazawa also later arrived at the scene and asked if she could retrieve the purse from the truck. However, Officer Hsu "wasn't going to let [Ikimaka] go back in the vehicle to grab the purse" because KPD had already seized the vehicle as evidence.

After the conversation with Sergeant Nesbitt, Officer Hsu told Ikimaka and Henderson that they were not being arrested today, and that they could go. However, Ikimaka chose to stay, and Officer Agbayani read him his Miranda rights. Ikimaka initially indicated he did not want to make a statement. However, he then apparently spontaneously said to Officer Agbayani, "I have [Numazawa's] bag in my truck. Can you just arrest me for theft and don't take my truck?"

### c. Circuit court's ruling

The circuit court orally denied the motion to suppress on the grounds that KPD had probable cause to seize the truck and that the dog search was appropriate. On May 13, 2015, the

11

circuit court issued its written order denying Ikimaka's motion to suppress. The circuit court determined that Officer Hsu had reasonable suspicion to stop Ikimaka, had probable cause to believe a theft had been committed, and that the automobile exception permitted KPD to seize the truck. The circuit court also determined that the dog sniff was permissible because Ikimaka "had no expectation of privacy in the airspace around his vehicle, and there was no inappropriate, dragnet search done."

### 3. Jury trial

Ikimaka and Numazawa's joint jury trial commenced on August 17, 2015. The following is relevant to the issues we address on certiorari.

#### a. Officer Hsu's testimony

The State called Officer Hsu, who gave testimony substantively similar to his April 2, 2015 testimony at the hearing on Ikimaka's motion to suppress relating to the traffic stop and the seizure of Ikimaka's truck. At trial, Officer Hsu did not testify about Numazawa's drug history or the dog sniff. Officer Hsu also testified that he had worked for KPD for approximately seven years and had participated in "[a]pproximately over 50" drug-related investigations.

On cross-examination, Officer Hsu testified that he did not see Ikimaka touch any of the drugs or ingest the drugs, and the following exchange took place.

> Q.    You never saw Mr. Ikimaka smoking or otherwise ingesting any drugs; correct?
> A.    For that night or --
> Q.    Ever?
> A.    Yes.  I never seen him do that, yes.
> Q.    And you have no way of knowing whether Mr. Ikimaka --
> THE COURT:  Approach.
> (The following was heard at the bench.)
> THE COURT:  You just realize you asked a very open-ended question and --
> [DEFENSE]: I knew the answer, Judge.
> THE COURT:  So it's real risky.  I just want to say I thought it was a very risky question and that is open for the redirect examination.  Okay.  Thank you.
> (The following was heard in open court.)
> BY [DEFENSE]:
> Q.    Officer [Hsu], you have no way of knowing whether Mr. Ikimaka ever intended to possess any of those drugs; correct?
> A.    Correct.
> [THE STATE]: Your Honor, approach.
> THE COURT:  Approach.
> (The following was heard at the bench.)
> THE COURT:  This is an interesting question.  So, [State], let me hear the argument.
> [THE STATE]: First of all, it's speculation.  The officer's not going to (inaudible).  Third, it's a question for the jury -- I mean intended --
> THE COURT: I think I'm going to allow him to answer because this is another area of redirect that you can go into.  The door was opened, how you establish intent and all that. You can do what you need to, but the issue of intent was raised by [the defense], but only for Mr. Ikimaka . . . .
> [THE STATE]: Okay.  Thank you.

On redirect examination, the following exchange took place.

> Q:    Now, I believe [the defense] asked about Larry Ikimaka's intent regarding the drugs found in the vehicle. As a police officer, would you say that Larry Ikimaka had intent to possess drugs, had knowledge of drugs, if he stated "Just arrest me and don't take my truck"?
> [DEFENSE]: May we approach?
> THE WITNESS: Yes.
> THE COURT: Approach.
> (The following was heard at the bench.)
> [DEFENSE]: I think it calls for speculation.
> THE COURT: This is all the intent questions that was asked . . . during cross-examination.

[DEFENSE]: But the intent -- but he can't testify -- he's speculating as to what my client.

THE COURT: You asked him to speculate about intent, so this is just a reasonable -- a logical, reasonable follow up to the questions. That's why I brought you here when the question was asked.

[DEFENSE]: Well, I thought you were talking about 404(b). I asked him whether he has any way to know Mr. Ikimaka's opinion, and she's asking him and saying hey, he's speculating about what Mr. Ikimaka's intent is.

THE COURT: But you asked him to speculate on the issue of intent. He answered. So now I'm going to allow the State to ask the question. You also asked questions about whether he had prior drug use. I don't know whether he did or didn't, but that certainly opens the door.

[DEFENSE]: I didn't ask that question. I asked on that date and he said "ever?" So I didn't want to leave it hanging for the jury. That's why I said "yeah" after. That's the way he responded.

THE COURT: You opened the door on that. I don't know whether there's any information on that. That's why I brought you up and said this was a risky line of questioning. I mean, it was apparent to the Court. But the strategy you take during your questioning, I don't get involved in.

[DEFENSE]: I did that but what I'm saying with regards to -- I don't think she's allowed to ask him if he has a prior history unless she can go through the whole 404(b). That's not what I asked him. I asked him on that day and he asked me "ever?" So it wasn't fair to me to leave it hanging for the jury.

THE COURT: I don't know what's fair or not. All I know is the question was asked so I'm going to allow it. I don't know if there's any relevant information. But as far as the intent part, sure, I'm going to allow [the State] to question about intent given it was raised by you in cross-examination. So you cannot raise an issue and then not expect the other parties to follow up on that, so this is just a reasonable follow up. So your objection is overruled. Thank you.

(The following was heard in open court.)

. . . .

BY [THE STATE]:

Q.    And, Officer [Hsu], would the fact that Mr. Ikimaka tried to stop the police from taking his truck by saying that indicate his intent to possess drugs in the truck?

A.    Yes.

### b.    Officer Agbayani's testimony

The State called Officer Agbayani, who also gave testimony substantively similar to his April 2, 2015 testimony at the hearing on Ikimaka's motion to suppress, but also provided the

following testimony relevant to the issues we address on certiorari.

At approximately 2:30 a.m. on October 13, 2014, Officer Agbayani arrived at the Kintaro's Restaurant area in response to Numazawa's 911 call. Officer Hsu, Ikimaka, and Henderson were at the Kintaro's area when he arrived. The following exchange between Officer Agbayani and the DPA then took place:

> Q. Okay. And did you speak to [Ikimaka]?
> A. Yes.
> Q. And you asked [Ikimaka] if he wanted to talk to you about what had happened with the purse?
> A. Yes.
> Q. And he didn't want to talk to you?
> A. Yes.
> Q. And because he didn't want to talk to you, you didn't ask him any questions?
> A. No, I did not.
> Q. And after he initially told you that he didn't want to talk to you --
> THE COURT: Approach.
> (The following was heard at the bench.)
> THE COURT: I'm going strike all this line of questioning because he has the right to remain silent. It cannot be used against him.

The circuit court then struck the DPA's line of questioning and instructed the jury not to consider those questions.

Officer Agbayani then stated that Ikimaka spontaneously said, "I have [Numazawa's] bag in my truck. Can you just arrest me for theft and don't take my truck?" Officer Hsu had, however, given him "specific instructions not to let anybody get into the truck."

On cross-examination by Ikimaka, Officer Agbayani again referenced the fact that Ikimaka did not want to make a statement in the following exchange:

> Q. Okay. And when he was 15 to 20 feet away from you and said something to you, you were walking away from him or he was walking away from you or no?
> A. I was walking away from him, but this is -- he's also approaching me. Because when I left him, I have to inform my beat partner that he wasn't -- he doesn't want to answer my questions. And then, you know -- I mean, I'm not saying that I have good peripheral views, but we always look -- for security reasons, we always like this, our head is always on swivel. I can see him, you know, kind of like coming towards me.
> Q. And that's when he talked to you?
> A. When he said, yes, that statement, sir.

(Emphasis added.)

### c. After completion of State's evidence

After the State rested its case and the circuit court denied Ikimaka's motions for judgment of acquittal and directed verdict, on August 20, 2015, Ikimaka moved for a mistrial due to the prosecution's elicitation of testimony from Officer Agbayani regarding Ikimaka's exercise of his right to remain silent. The circuit court denied the motion, noting that it had issued curative instructions.

Ikimaka and Numazawa did not call any witnesses, and they did not testify.

On August 24, 2015, the jury found Ikimaka guilty of both counts. Numazawa was acquitted.

On December 30, 2015, the circuit court issued its second amended judgment of conviction and probation sentence,

16

sentencing Ikimaka to four years of probation with nine months additional imprisonment for both Counts 1 and 2.[8]

## C.    ICA proceedings

On January 4, 2016, Ikimaka filed his notice of appeal to the ICA.[9]  On December 18, 2019, the ICA filed its amended memorandum opinion, affirming Ikimaka's conviction.  State v. Ikimaka, CAAP-16-0000003 (App. Dec. 18, 2019) (mem.).[10]  In relevant part, the ICA held the circuit court did not abuse its discretion by allowing Officer Hsu to give his lay opinion under HRE Rule 701.  Ikimaka, mem. op. at 13.  According to the ICA, although Officer Hsu "did not have personal knowledge of [Ikimaka's] statement" to "[j]ust arrest [him] and don't take [his] truck," Officer Agbayani had told him about the statement and there was no dispute that Ikimaka made the statement. Ikimaka, mem. op. at 16.  Therefore, the ICA determined Officer Hsu's opinion was rationally related to his knowledge, experience, and perceptions.  Id.

The ICA also held the DPA did not commit misconduct by eliciting testimony about Ikimaka's exercise of his right to

---

[8]    Ikimaka was also ordered to pay a $205 Crime Victim Compensation Fee, a $150 Probation Services Fee, and a $2,000 Drug Demand Reduction Assessment for Count 1, and a $105 Crime Victim Compensation Fee and a $1,000 Drug Demand Reduction Assessment for Count 2.

[9]    See supra text at and note 3, regarding the points on appeal.

[10]    There are no substantive differences between the original memorandum opinion filed on November 27, 2019, and the amended memorandum opinion filed on December 18, 2019.

remain silent. Ikimaka, mem. op. at 18 (citing State v. Tsujimura, 140 Hawai'i 299, 315, 400 P.3d 500, 516 (2017) (holding the test in cases where the prosecution elicits information regarding a defendant's prearrest silence is whether the prosecutor intended for the information to imply the defendant's guilt or whether the character of the information suggests that the prearrest silence may be considered as inferential evidence of guilt). The ICA determined that the DPA had elicited the testimony in an attempt to "set the physical circumstances of [a] permitted statement" (Ikimaka's apparent spontaneous statement to Officer Agbayani) and did not intend to use Ikimaka's silence to imply his guilt. Ikimaka, mem. op. at 18-20. Furthermore, the ICA noted the circuit court immediately struck the challenged testimony. Ikimaka, mem. op. at 20. The ICA also stated in a footnote that "at the time of this trial, it had not been decided by either the United States Supreme Court nor the Hawai'i Supreme Court that a defendant's right to remain silent existed prior to arrest, or whether prearrest silence could be used against a defendant at trial." Ikimaka, mem. op. at 20 n.15.

On January 21, 2020, the ICA issued its judgment affirming the circuit court's second amended judgment of conviction.

**D.    Application for writ of certiorari**

Ikimaka's application restates arguments made before the ICA.  As noted, we only address Ikimaka's first two questions on certiorari: whether the DPA should have elicited testimony regarding Ikimaka's exercise of his right to remain silent, and whether the circuit court erred by admitting into evidence Officer Hsu's lay opinion testimony on Ikimaka's intent and knowledge.  We need not and do not address Ikimaka's remaining questions on certiorari.

## III.   Standards of Review

**A.   Plain error**

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  HRPP Rule 52(b) (2014).

"The appellate court 'will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.'"  State v. Domut, 146 Hawai'i 183, 190, 457 P.3d 822, 829 (2020) (quoting State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006)).  "An appellate court's 'power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look

19

to [their] counsel for protection and bear the cost of counsel's mistakes.'"  Id. (quoting Nichols, 111 Hawai'i at 335, 141 P.3d at 982).

B.  **Motion to suppress**

"A [circuit] court's ruling on a motion to suppress evidence is reviewed de novo to determine whether the ruling was 'right' or 'wrong.'"  Estabillio, 121 Hawai'i at 269, 218 P.3d at 757.  "The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution."  Id.

C.  **Prosecutorial misconduct**

"The term 'prosecutorial misconduct' is a legal term of art that refers to any improper action committed by a prosecutor, however harmless or unintentional."  State v. Udo, 145 Hawai'i 519, 534, 454 P.3d 460, 475 (2019).  "A prosecutor may not imply guilt from a defendant's exercise of the right to remain silent[.]"  Tsujimura, 140 Hawai'i at 314, 400 P.3d at 515.  The test of whether a prosecutor's comment was improper is whether "that comment was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a

comment on the failure of the accused to testify." State v. Rodrigues, 113 Hawai'i 41, 49, 147 P.3d 825, 833 (2006) (quoting State v. Wakisaka, 102 Hawai'i 504, 515, 78 P.3d 317, 328 (2003)) (internal quotation marks omitted).

## D. Admission of opinion testimony

"[A]dmission of opinion evidence is a matter within the discretion of the trial court, and only an abuse of that discretion may result in reversal." State v. Tucker, 10 Haw. App. 73, 89, 861 P.2d 37, 46 (1993) (citing Sherry v. Asing, 59 Haw. 135, 148, 531 P.2d 648, 658 (1975)). "[T]o constitute an abuse of discretion a court must have clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

## IV. Discussion

## A. The dog sniff was an illegal search, and the motion to suppress should have been granted

Pursuant to HRPP Rule 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We notice plain error with regard to the circuit court's denial of Ikimaka's motion to suppress. In his motion to suppress, Ikimaka argued the dog sniff conducted on the truck was an impermissible

21

general exploratory search.  We agree that the dog sniff was impermissible.

"[T]he right to be free of 'unreasonable' searches and seizures . . . requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances." State v. Kaluna, 55 Haw. 361, 369, 520 P.2d 51, 58-59 (1974). "A stop of a vehicle for an investigatory purpose constitutes a seizure within the meaning of the constitutional protection against unreasonable searches and seizures."  Estabillio, 121 Hawai'i at 270, 218 P.3d at 758.  In State v. Perez, 111 Hawai'i 392, 397, 141 P.3d 1039, 1044 (2006), this court adopted a two-part test to determine whether a search or seizure pursuant to an investigative stop is reasonable.  First, the initial action must be justified at its inception, and second, the court must determine whether the search or seizure was reasonably related in scope to the circumstances which justified the interference in the first place.  Id. (citing Terry v. Ohio, 392 U.S. 1, 20 (1968)).

The dog sniff conducted on the truck was not reasonably related in scope to Officer Hsu's initial stop of Ikimaka as it was unrelated to Ikimaka's alleged theft of Numazawa's purse. An investigation unrelated to the initial stop "must be supported by independent reasonable suspicion to be

22

constitutional." Estabillio, 121 Hawai'i at 273, 218 P.3d at 761. Numazawa's alleged drug history did not give KPD reasonable suspicion to believe the truck driven by Ikimaka contained drugs.

Moreover, the dog sniff was impermissible based on the case law existing at the time of the motion to suppress. The facts of this case are distinguishable from Groves and Snitkin, which the circuit court cited in its order denying Ikimaka's motion to suppress. In Groves, Groves was initially stopped at the airport after a pilot reported the smell of marijuana emanating from Groves's suitcase. 65 Haw. at 105-06, 649 P.2d at 368. After stopping Groves, a police officer also noticed the smell of marijuana from the suitcase, after which a dog sniff was performed on the suitcase. 65 Haw. at 106, 649 P.2d at 368. This court held that Groves had no reasonable expectation of privacy in the airspace around his suitcase and the dog sniff was not an illegal search. 65 Haw. at 113, 649 P.2d at 372. However, unlike in Groves, Ikimaka was stopped because he had allegedly stolen Numazawa's purse, and the ensuing dog sniff for drugs was unrelated to that reason.

Also, in Snitkin, the United States Customs Service Drug Enforcement Agency performed a routine canine survey of a Federal Express cargo area, and the drug-sniffing dog alerted to the presence of narcotics in a package. 67 Haw. at 169-70, 681 P.2d at 982. The police obtained a search warrant, found

23

cocaine in the package, resealed the package, and arrested Snitkin after he picked up the package. 67 Haw. at 170, 681 P.2d at 982. This court held that the reasonableness of a dog sniff "should be determined by balancing the State's interest in using the dog against the individual's interest in freedom from unreasonable government intrusions," and that Snitkin's freedom interest in the airspace around his package was minimal. 67 Haw. at 172, 681 P.2d at 983-84. However, we specifically noted that the package was not detained at the time of the dog sniff. 67 Haw. at 172, 681 P.2d at 984. In this case, unlike Snitkin, KPD had detained the truck at the time of the dog sniff.

Alvarez, decided after the circuit court decided the subject motion to suppress, has made it clear that this dog sniff was an unreasonable search. Alvarez involved a traffic stop based on police officers' observations that one of the passengers was not wearing a seatbelt. 138 Hawai'i at 175, 378 P.3d at 891. After stopping the car, driven by Alvarez, the officers recognized Alvarez and his passengers from prior encounters while assigned to the Hilo Vice Section. Id. The officers had also received "reliable confidential information" within the past five days that Alvarez was distributing crystal methamphetamine. Id. The officers brought a drug-sniffing dog to the scene, and the dog alerted to the presence of drugs in the car. Id. This court held that the dog sniff was not

reasonably related in scope to the original traffic stop, and the "tip from a confidential informant under the circumstances [was] 'not sufficient to establish reasonable suspicion for an investigatory detention.'" 138 Hawai'i at 184, 378 P.3d at 900 (citing Estabillio, 121 Hawai'i at 274, 218 P.3d at 762).

Like in Alvarez, Ikimaka was not stopped on suspicion of possessing drugs. Because KPD lacked an independent basis to support a reasonable suspicion that the truck contained drugs and the dog sniff was not reasonably related in scope to the circumstances that justified the detention of the truck in the first place, the dog sniff was impermissible.

Because the result of the dog sniff was the only piece of information supporting the warrant to search the truck for drugs, the drug evidence should have been suppressed under the fruit of the poisonous tree doctrine. See Alvarez, 138 Hawai'i at 185, 378 P.3d at 901; Estabillio, 121 Hawai'i at 274, 218 P.3d at 762.[11]

---

[11] The improper dog sniff invalidated the search warrant. See State v. Tagaolo, 93 Hawai'i 314, 2 P.3d 718 (App. 2000) (holding officer's suspicion that firearm and ammunition were in fanny bag was fruit of poisonous tree of his improper warrantless search of fanny bag by feeling its contents, rendering search warrant invalid and requiring suppression of items found in fanny bag). Even if KPD had, without the dog sniff, obtained a search warrant to search inside the truck for Numazawa's purse, it should have been readily identifiable and probable cause would have been required for a warrant to allow a further search of the contents of purses within the truck. See State v. Jenkins, 62 Haw. 660, 619 P.2d 108 (1980) (requiring search warrant to search personal luggage taken by police from automobiles); State v. Wong, 68 Haw. 221, 708 P.2d 825 (1985) (holding warrantless search of handbag an unreasonable search despite defendant having stated he had vial of cocaine

(continued . . .)

25

Hence, the circuit court should have granted Ikimaka's motion to suppress.  We therefore vacate Ikimaka's conviction, and remand for further proceedings consistent with this opinion.  Although this ruling may be dispositive of the drug charges against Ikimaka, we address his first two questions on certiorari to provide guidance.

**B.    The DPA should not have referenced Ikimaka's initial refusal to speak to Officer Agbayani after Miranda warnings had been given**

Ikimaka argues the DPA committed prosecutorial misconduct by eliciting testimony about the exercise of his right to remain silent.  The ICA held that the DPA did not commit misconduct by referencing Ikimaka's initial refusal to talk to Officer Agbayani after he received Miranda warnings because she was not attempting to comment on Ikimaka's silence, did not intend to use Ikimaka's silence to imply his guilt, and the circuit court immediately gave curative instructions.  Ikimaka, mem. op. at 19-21 (citing Tsujimura, 140 Hawai'i at 315, 400 P.3d at 516).  The ICA noted that at the time of Ikimaka's trial, neither the United States Supreme Court nor this court had decided whether

_____

(. . . continued)
therein); State v. Wallace, 80 Hawai'i 382, 405, 910 P.2d 695, 718 (1996) (holding that forty-three heat-sealed clear plastic packets containing cocaine seized during warrant allowing search of automobile for marijuana were not "closed" containers with a reasonable expectation of privacy requiring a warrant to conduct a further search).

the right to remain silent attached prior to arrest. Ikimaka, mem. op. at 20 n.15.

Although the ICA cited Tsujimura, in that case, the DPA was referring to the defendant's pre-arrest silence before Miranda warnings were administered. 140 Hawai'i at 309, 311, 400 P.3d at 510, 512. Although Ikimaka was not formally arrested at the point in time the DPA referenced, Officer Agbayani had already given Ikimaka Miranda warnings. See State v. Uganiza, 68 Haw. 28, 30, 702 P.2d 1352, 1354 (1985) (involving a defendant who was arrested, read Miranda rights, and not free to leave, and who invoked his right to remain silent by indicating that he did not want to make a statement).

Whether or not Miranda rights have been given, prosecutors may not comment on a defendant's silence to imply that such silence is evidence of guilt. State v. Melear, 63 Haw. 488, 496, 630 P.2d 619, 626 (1981). The test of whether a prosecutor's comment was improper is whether "that comment was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment" on the exercise of the right to remain silent. Rodrigues, 113 Hawai'i at 49, 147 P.3d at 833 (quoting Wakisaka, 102 Hawai'i at 515, 78 P.3d at 328) (internal quotation marks omitted).

On direct examination of Officer Agbayani, the following exchange between the DPA and Officer Agbayani took place:

27

```
Q:    Okay.  And did you speak to [Ikimaka]?
A:    Yes.
Q:    And you asked [Ikimaka] if he wanted to talk to you
about what had happened with the purse?
A:    Yes.
Q:    And he didn't want to talk to you?
A:    Yes.
Q:    And because he didn't want to talk to you, you didn't
ask him any questions.
A:    No, I did not.
Q:    And after he initially told you that he didn't want
to talk to you --
THE COURT:  Approach.
```

(Emphases added.)

Contrary to the ICA's memorandum opinion, the DPA's line of questioning could have implied Ikimaka's guilt.  Although the DPA's questions could have "set the physical circumstances" of Ikimaka's eventual statement in some manner, Ikimaka, mem. op. at 19, the DPA referenced Ikimaka's silence before eliciting testimony about Ikimaka's eventual statement regarding Numazawa's purse.  Although even one reference was improper, the DPA made three references in quick succession.  Because we vacate Ikimaka's conviction on other bases, we need not determine the DPA's intent or whether the questions constituted prosecutorial misconduct.  We caution, however, that prosecutors may not elicit testimony regarding a defendant's exercise of their right to remain silent.  See Rodrigues, 113 Hawai'i at 49, 147 P.3d at 833.

28

## C. Officer Hsu's opinion testimony as to Ikimaka's intent and knowledge

Ikimaka also argues Officer Hsu's testimony regarding his intent to possess the drugs was speculative and inadmissible pursuant to HRE Rules 602 (1992)[12] and 701 (1984).[13] The ICA held that Officer Hsu's testimony was a lay opinion permissible under HRE Rule 701 and that Ikimaka opened the door to his redirect testimony by questioning Officer Hsu about intent on cross-examination. Ikimaka, mem. op. at 15-18.

On cross-examination, the following exchange between Ikimaka and Officer Hsu occurred:

> Q.    You never saw Mr. Ikimaka smoking or otherwise ingesting any drugs; correct?
> A.    For that night or --
> Q.    Ever?
> A.    Yes.  I never seen him do that, yes.
> Q.    And you have no way of knowing whether Mr. Ikimaka --
> . . . .
> Q.    Officer [Hsu], you have no way of knowing whether Mr. Ikimaka ever intended to possess any of those drugs; correct?
> A.    Correct.

---

[12]    HRE Rule 602 provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.  This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

[13]    HRE Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The DPA objected to Ikimaka's question as calling for speculation, but the circuit court allowed the question, stating, "The door was opened, how you establish intent and all that," and that the DPA could address the issue on redirect.

The circuit court erred, however, in ruling that the defense "opened the door."

> The 'opening the door' doctrine is essentially a rule of expanded relevancy . . . ." State v. James, 144 N.J. 538, 677 A.2d 734, 742 (1996). "Under this doctrine, when one party introduces inadmissible evidence, the opposing party may respond by introducing [ ] inadmissible evidence on the same issue." State v. Fukusaku, 85 Hawai'i 462, 497, 946 P.2d 32, 67 (1997); see also State v. Dvorak, 295 S.W.3d 493, 502 (Mo. Ct. App. E.D. 2009) (the doctrine applies after one party introduces inadmissible evidence). Admissible evidence therefore does not 'open the door' to otherwise inadmissible evidence. State v. Middleton, 998 S.W.2d 520, 528 (Mo. 1999) ("A party may not, however, introduce inadmissible evidence to rebut inferences raised by the introduction of admissible evidence during cross-examination.").

State v. Lavoie, 145 Hawai'i 409, 422-23, 453 P.3d 229, 242-43 (2019) (footnote omitted). As we further stated in our recent opinion in State v. Miranda, --- Hawai'i ---, -- n.13, --- P.3d ---, -- n.13, 2020 WL 2988268 at *10 n.13 (June 4, 2020), this court has not adopted the "opening the door" doctrine:

> [The opening the door doctrine] has also been referred to as the doctrine of "curative admissibility" or "fighting fire with fire." State v. Fukusaku, 85 Hawai'i 462, 497, 946 P.2d 32, 67 (1997). This court has not determined whether to adopt the doctrine. State v. Lavoie, 145 Hawai'i 409, 424, 453 P.3d 229, 244 (2019) ("[E]ven if we were to adopt the doctrine of curative admissibility, it would not be applicable to the present case." (quoting Fukusaku, 85 Hawai'i at 497, 946 P.2d at 67)).

30

Thus, although some courts have adopted the "opening the door" doctrine when one party introduces <u>inadmissible</u> evidence, which allows the opposing party to "respond by introducing inadmissible evidence on the same issue," we have not done so. And the doctrine would in any event be inapplicable here because "admissible evidence [] does not 'open the door' to otherwise inadmissible evidence." <u>Lavoie</u>, 145 Hawaiʻi at 422, 453 P.3d at 242. In this case, Ikimaka's question of whether Officer Hsu had "no way of knowing" his intent to possess drugs did not elicit inadmissible evidence. Ikimaka's question did not ask Officer Hsu to speculate on Ikimaka's intent, but rather sought to point out that Officer Hsu could not know Ikimaka's intent. Therefore, Ikimaka's cross-examination question could not have "opened the door" to otherwise inadmissible evidence.

In addition, for the reasons explained below, the following exchange between the DPA and Officer Hsu was otherwise inadmissible:

> Q: Now, I believe [the defense] asked about Larry Ikimaka's intent regarding the drugs found in the vehicle. As a police officer, would you say that Larry Ikimaka had intent to possess drugs, had knowledge of drugs, if he stated "Just arrest me and don't take my truck"?
> . . . .
> Q: And, Officer [Hsu], would the fact that Mr. Ikimaka tried to stop the police from taking his truck by saying that indicate his intent to possess drugs in the truck?
> A: Yes.

HRE Rule 602 provides that witnesses "may not testify to a matter unless evidence is introduced sufficient to support a

31

finding that the witness has personal knowledge of the matter." The commentary to HRE Rule 602 explains that "personal knowledge" means "that the witness perceived the event about which [they] testif[y] and that [they have] a present recollection of that perception." HRE Rule 701 provides that lay witness opinion testimony is limited to "those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Although HRE Rule 602 requires witness testimony to be based on the "personal knowledge" of that witness, as the ICA noted in its memorandum opinion, "Officer Hsu did not have personal knowledge of [Ikimaka's] statement." Ikimaka, mem. op. at 16. Officer Hsu was not testifying as an expert witness under HRE Rule 702 (1992),[14] and his opinion was therefore a lay opinion under HRE Rule 701. HRE Rule 701 requires that a "lay opinion be based upon firsthand knowledge," and Officer Hsu did not have firsthand knowledge of Ikimaka's statement. HRE Rule

---

[14]    HRE Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

701 cmt. Therefore, Officer Hsu's opinion that Ikimaka's statement evidenced his knowledge and intent to possess drugs was not admissible under HRE Rule 602 or 701.

Moreover, Officer Hsu's testimony on Ikimaka's intent and knowledge was also impermissible because it expressed a legal conclusion as to Ikimaka's state of mind. See State v. Vliet, 91 Hawai'i 288, 296-97, 983 P.2d 189, 197-98 (1999). While HRE Rule 704 (1980) permits testimony "embrac[ing] an ultimate issue to be decided by the trier of fact," it "does not allow 'the admission of opinions which would merely tell the jury what result to reach[.]'" State v. Batangan, 71 Haw. 552, 559, 799 P.2d 48, 52 (1990) (quoting HRE Rule 704 cmt.); see also State v. Ryan, 112 Hawai'i 136, 141, 144 P.3d 584, 589 (App. 2006) (holding an officer's opinion testimony that the complaining witness was truthful impermissibly invaded the province of the jury to determine the facts). "Nor is [HRE Rule 704] intended to allow a witness to give legal conclusions." Vliet, 91 Hawai'i at 296-97, 983 P.2d at 197-98.

Here, Ikimaka was charged with promoting a dangerous drug in the second degree in violation of HRS § 712-1242, which requires "knowing" possession of the drugs. Ikimaka was also charged with unlawful use of drug paraphernalia in violation of HRS § 329-43.5(a), which requires possession of drug paraphernalia with "intent to use" it for the enumerated

33

purposes.  Therefore, Officer Hsu's testimony as to Ikimaka's intent and knowledge expressed a legal conclusion and told the jury what result to reach, and it was not admissible under HRE Rule 704.

Additionally, Officer Hsu's testimony was improperly "imbued with an aura of expertise," as he testified at trial that he had been involved in "[a]pproximately over 50" drug investigations.  See State v. Calara, 132 Hawai'i 391, 393, 322 P.3d 931, 933 (2014) (holding an officer's testimony regarding whether complaining witness's allegations provided him with probable cause was tantamount to an expression of an opinion that the witness had been truthful, which was "imbued with an aura of expertise due to his experience" and invaded the province of the jury); Ryan, 112 Hawai'i at 141, 144 P.3d at 589 (holding that an emphasis on officers' training and experience in domestic violence cases gave the officers "an aura of being experts in evaluating the truthfulness" of the complaining witness's statements).  Therefore, the circuit court abused its discretion by admitting Officer Hsu's testimony on Ikimaka's intent and knowledge.

## V.  Conclusion

We therefore vacate in part the ICA's January 21, 2020 judgment on appeal to the extent it affirmed the circuit court's December 30, 2015 second amended judgment of conviction and probation sentence but affirm it to the extent it dismissed the State's cross-appeal as moot.  We also vacate the circuit court's December 30, 2015 second amended judgment of conviction and probation sentence and its May 13, 2015 order denying Ikimaka's motion to suppress.  We remand this matter to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Rosa Flores<br>for Petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Tracy Murakami<br>for Respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

