**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000644
07-NOV-2024
08:12 AM
Dkt. 103 SO**

CAAP-21-0000644

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
TYLER BENJAMIN NICHOLS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-21-0000023)

<u>SUMMARY DISPOSITION ORDER</u>
(By: Leonard, Acting Chief Judge, Hiraoka and Wadsworth, JJ.

Defendant-Appellant Tyler Benjamin Nichols (**Nichols**) appeals from the October 12, 2021 Judgment of Conviction and Sentence; Notice of Entry (**Judgment**) entered against him by the Circuit Court of the First Circuit (**Circuit Court**).[1] At the conclusion of a jury trial, Nichols was convicted of Assault Against a Law Enforcement Officer in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 707-712.6 (2014)[2]

---

[1] The Honorable James S. Kawashima presided.

[2] HRS § 707-712.6 provides:

> **§ 707-712.6. Assault against a law enforcement officer in the second degree.** (1) A person commits the offense of assault against a law enforcement officer in the second degree if the person recklessly causes bodily injury to a law enforcement officer who is engaged in the performance of duty.
> (2) Assault of a law enforcement officer in the second degree is a misdemeanor. The court shall sentence the person who has been convicted of this offense to a definite term of imprisonment, pursuant to section 706-663, of not less than thirty days without possibility of probation or suspension of sentence.

(**Assault LEO Second**) and the offense of Rules and Orders in violation of HRS §§ 127A-25 (2023)[3] and 127A-29 (Supp. 2019)[4] (**Violation of Rules and Orders**), as designated in the Third Supplementary Proclamation by David Y. Ige, Governor of the State of Hawaiʻi, dated March 23, 2020 (**Proclamation**).[5]

---

[3]     HRS § 127A-25 provides, in relevant part:

> **§ 127A-25  Rules and orders.**  (a) For the purpose of carrying out any provision of this chapter, the governor may adopt rules for the State and the mayor may adopt rules for the county which may, if so stated in the rules, have the force and effect of law.  Even though the rules are prescribed pursuant to a power conferred, or having mandatory or prohibitive effect, only in the event of a state of emergency or local state of emergency, the rules nevertheless may be prescribed prior thereto if stated therein to have the force and effect of law only in the event of a state of emergency or local state of emergency. All the rules, and likewise all other action taken under this chapter, shall be made and taken with due consideration of the orders, rules, regulations, actions, recommendations, and requests of federal authorities relevant thereto. . .

[4]     HRS § 127A-29 provides, in relevant part:

> **§ 127A-29  Misdemeanors.**  Any person violating any rule of the governor or mayor prescribed and promulgated pursuant to this chapter and having the force and effect of law, shall, if it shall be so stated in the rule, be guilty of a misdemeanor.  Upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both.

[5]     Nichols was charged by Complaint, *inter alia*, as follows:

> Nichols intentionally or knowingly fail[ing] to stay at home or in his/her place of residence, without being permitted to do so for essential activities and/or to engage in essential businesses and operations, and/or except as necessary to maintain continuity of operations of the federal critical infrastructure sectors and as further designated in the [Proclamation] and/or by the Director of the Hawaiʻi Emergency Management Agency, with intent or knowledge that a state of emergency had been proclaimed by the governor of the State of Hawaiʻi pursuant to Chapter 127A of the [HRS] and that the state of emergency was in effect on April 21, 2020, throughout the State of Hawaiʻi, and that a rule was prescribed and promulgated pursuant to Chapter 127A of the [HRS] by the governor of the State of Hawaiʻi, having the force and effect of law, in the [Proclamation], thereby committing the offense of Rules and Orders, in violation of Section 127A-25 and Section 127A-29 of the [HRS].

Nichols raises three points of error on appeal, contending that: (1) the Circuit Court erred in allowing the State to adduce the testimony of Honolulu Police Department (**HPD**) Officer Darrell Bryce (**Officer Bryce**) that Nichols had provided a home address without first holding an evidentiary hearing to determine voluntariness; (2) there is insufficient evidence to support Nichols's conviction for Assault LEO Second; and (3) there is insufficient evidence to support Nichols's conviction for the Violation of Rules and Orders.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Nichols's points of error as follows:

(1) Nichols argues that the Circuit Court should have made a voluntariness determination as mandated by HRS § 621-26 (2016) before it admitted Officer Bryce's testimony that Nichols had provided him a home address after he was arrested.

HRS § 621-26 provides: "No confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made." The Hawaiʻi Supreme Court has held:

> Pursuant to HRS § 621-26, the trial court <u>must</u> make a determination of the voluntariness of a defendant's statements, and the failure to do so constitutes reversible error. See <u>State v. Green</u>, 51 Haw. 260, 264, 457 P.2d 505, 508 (1969) ("[T]he trial judge has the duty to determine the admissibility of an inculpatory statement out of the presence of the jury and prior to the jury's exposure to such evidence."). Whether a motion to determine the voluntariness of a confession is initiated by the prosecution, the defense, or *sua sponte* by the trial court, is ultimately immaterial to the statutory requirement of a voluntariness hearing. <u>Cf. Jackson v. Denno</u>, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (holding that failure to conduct hearing into voluntariness of defendant's

3

> confession amounted to denial of due process in violation of [F]ourteenth [A]mendment to the United States Constitution)[.]

State v. Naititi, 104 Hawaiʻi 224, 233, 87 P.3d 893, 902 (2004); accord State v. Hewitt, 149 Hawaiʻi 71, 76, 481 P.3d 713, 718 (App. 2021), rev'd on other grounds, 153 Hawaiʻi 33, 526 P.3d 558 (App. 2023); State v. White, 1 Haw. App. 221, 224, 617 P.2d 98, 100–01 (1980). HRS § 621-26 applies to inculpatory statements as well as confessions. See State v. Kelekolio, 74 Haw. 479, 501-02 n.13, 849 P.2d 58, 69 n.13 (1993).

Here, Nichols's provision of a home address to Officer Bryce upon arrest was an inculpatory statement requiring a voluntariness determination under HRS § 621-26. Whether or not Nichols had a home was relevant to the issue of whether he was disregarding the Governor's order to stay at home. For example, in opposing Nichols's motion for judgment of acquittal, the Deputy Prosecuting Attorney (**DPA**) pointed to Officer Bryce's testimony in arguing, *inter alia*:

> In addition, Officer Bryce testified that [Nichols] provided him information, so he did provide that he had a residence and that he was a cook in a restaurant, and the trier of fact can infer from that information because Officer Oshiro also testified that in addition to the police department getting updated as to the proclamations that were being given by the governor, this is approximately 26 days into the shutdown, and Officer Oshiro said that this information as to the shutdown was being provided through the newspaper and television that he was watching and reading both, he knew that it was being provided.

(Emphasis added).

We conclude that the Circuit Court erred in not making a voluntariness determination prior to the admission of Officer Bryce's testimony that Nichols provided him with a home address.

(2)  Nichols argues that there is insufficient evidence to support Nichols's conviction for Assault LEO Second because the evidence presented by the defense indicates that what happened was an accident when Officer Bryce, a rather large man, pushed Nichols's head down onto HPD Officer Aaron Oshiro's (**Officer Oshiro**) hand.

In order to convict a defendant for Assault LEO Second, the State must prove that they "recklessly cause[] bodily injury to a law enforcement officer who is engaged in the performance of duty."  HRS § 707-712.6.

HRS § 702-206(3) (2014) defines "recklessly," in relevant part, as follows:

> (c)  A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.
>
> (d)  A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

The State need not "introduce direct evidence of a defendant's state of mind in order to prove that the defendant acted . . . recklessly."  State v. Eastman, 81 Hawaiʻi 131, 140-41, 913 P.2d 57, 66-67 (1996) (citation omitted).

> [P]roof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient.  The mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances.

Id. at 141, 913 P.2d at 67 (citing State v. Batson, 73 Haw. 236, 254, 831 P.2d 924, 934 (1992)).

5

Here, viewing the evidence in the strongest light for the State, substantial evidence exists that Nichols recklessly caused bodily injury to Officer Oshiro. Nichols contends that the evidence adduced at trial establishes that Officer Oshiro's injury was caused by Officer Bryce pushing Nichols's open mouth into Officer Oshiro's hand. However, other evidence existed from which the jury could reasonably infer Nichols's reckless state of mind in causing Officer Oshiro's injury. The struggle between Nichols and the officers wherein Nichols pushed Officer Oshiro in the chest, knocked Officer Oshiro's taser out of his hand, and physically resisted Officer Oshiro's efforts to get his hands behind his back to arrest him, were sufficient evidence for a jury to infer that Nichols consciously disregarded a substantial and unjustifiable risk that his conduct would cause injury to Officer Oshiro.

(3) Nichols argues that there is insufficient evidence to support his conviction for Violation of Rules and Orders because the State failed to prove that Nichols had actual knowledge of the Governor's stay-at-home order. Nichols points to the charge in Count 2, which states, in relevant part:

> On or about April 21, 2020, in the City and County of Honolulu, State of Hawaiʻi [Nichols] did intentionally or knowingly fail to stay at home or in his/her place of residence, . . . with **intent or knowledge** that a state of emergency had been proclaimed by the governor of the State of Hawaiʻi pursuant to Chapter 127A of the [HRS] and that the state of emergency was in effect on April 21, 2020, throughout the State of Hawaiʻi, and that a rule was prescribed and promulgated pursuant to Chapter 127A of the [HRS] by the governor of the State of Hawaiʻi, having the

> force and effect of law, in the [Proclamation], thereby committing the offense of [Violation of Rules and Orders].

(Emphasis added).[6]

In conjunction with this argument, Nichols points to the State's argument that Nichols's pre-arrest silence was substantive evidence of Nichols's guilt. In closing argument, the deputy prosecuting attorney (**DPA**) argued to the jury, *inter alia*:

> And also looking at rule -- page number 16, it talks about what's called the state of mind, what a person's thinking or what the person knows. These are facts that we have to prove. So it says the state of mind with which a person commits an act such as intentionally, knowing, or recklessly may be proved by circumstantial evidence. While witnesses may see and hear, and thus be able to give direct evidence of what a person does or fails to do, there can be no eyewitness account of the state of mind with which the acts are done or omitted. <u>But what a person does or fails to do may or may not indicate the state of mind with which the person does or refrains from doing an act</u>.
>
> What happens upon the initial arrival of the officer? First thing he tells everybody is, eh, the beaches are closed, you're going to have to leave. <u>And for a very chatty person that Mr. Nichols is, **he never says anything like why, why is the park closed?**</u> You know why? Because just like John Orr, <u>he knew that the beach was closed, that there was a stay at home order, and he knew he wasn't supposed to be there, that's the reason why they knew the beach was closed.</u>

(Emphasis added).

The DPA further argued, "<u>You can infer that [Nichols] knew by the way he behaved, by the fact that he didn't argue with the officer</u>, about the fact that the beach was closed. <u>He's guilty of that charge</u>." (Emphasis added). The DPA's primary argument was that Nichols's failure to ask why the beach was closed, *i.e.*, his pre-arrest silence, proved that he was guilty

---

[6]     The State now argues that "actual knowledge" is not an element of the offense. However, this argument is raised for the first time on appeal, as evidenced by, *inter alia*, the Complaint, the jury instructions, and the State's closing argument. Therefore, we disregard this argument.

of the Violation of Rules and Orders offense.  There is no subtlety here - the DPA directly argued that Nichols's silence was evidence of Nichols's guilt.

Neither party specifically briefed the issue of whether the DPA committed prosecutorial misconduct in his closing argument when he argued that Nichols was guilty of Violation of Rules and Orders as evidenced by his not responding to the officer, *i.e.*, his silence – in other words, whether the prosecutor asked the jury to infer an admission or consciousness of guilt from Nichols's silence.  Therefore, pursuant to Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4), this court entered an order allowing the parties to file supplemental briefs on the issues of whether the DPA committed prosecutorial misconduct when he asked the jury to infer guilt from Nichols's silence – "he never says anything like why, why is the park closed?"

In supplemental briefing, the State merely repeats its "actual knowledge" argument noted in footnote 6 above and argues that, therefore, the prosecutor's alleged misconduct "is not relevant to any material issue in this case."  In supplemental briefing, Nichols argues that the prosecutor's argument was an impermissible, unconstitutional comment on his prearrest silence that implied his guilt to the jury and constituted prosecutorial misconduct that may have contributed to the verdict on Count 2 (Violations of Rules and Orders).

The supreme court has held:

> [P]rosecutorial misconduct is a legal term of art that refers to any improper action committed by a prosecutor, however harmless or unintentional.

> We have also repeatedly recognized the importance of the constitutional right against self-incrimination. This right is secured by article I, section 10 of the Hawaiʻi Constitution, which provides, "nor shall any person be compelled in any criminal case to be a witness against oneself." The right against self-incrimination is sacrosanct.
>
> Hence, we have held the right prohibits the prosecution from adducing evidence of or commenting on a person's exercise of that right.

State v. Borge, 152 Hawaiʻi 458, 464-65, 526 P.3d 435 441-42 (2023) (cleaned up) (concerning comment on a defendant's affirmative exercise of the right not to self-incriminate).

Furthermore, "the State may not use as substantive proof of guilt a defendant's prearrest silence that occurs at least as of the time of detention, for doing so would violate the right against compelled self-incrimination under article I, section 10 of the Hawaiʻi Constitution." State v. Tsujimura, 140 Hawaiʻi 299, 314, 400 P.3d 500, 515 (2017). Accordingly, when a prosecutor adduces evidence of or comments on a defendant's pre-arrest silence at least as of the time of detention, they have committed prosecutorial misconduct. See id.; accord State v. Ikimaka, 147 Hawaiʻi 207, 220, 465 P.3d 654, 667 (2020) (stating that a prosecutor making "even one reference," let alone "three references in quick succession" to defendant's pre-arrest silence was "improper"); State v. Pada, CAAP-19-0000680, 2021 WL 1156564, at *7 (Haw. App. Mar. 25, 2021) (SDO) ("[W]e conclude that the State violated Pada's right to remain silent, by eliciting during cross-examination [testimony about his pre-arrest silence], and by commenting on this information during the State's closing argument.").

Notably, the silence the DPA used against Nichols was not made in response to a question posed to him by Officer Oshiro. The <u>Tsujimura</u> court expressed particular concern with protecting defendants from the usage of this type of silence against them:

> In light of these circumstances, permitting silence to serve as an implication of guilt would mean that the State would always be able to use as substantive proof of guilt prearrest silence not made in response to a question by a police officer. <u>The prosecutor need only identify a point in time during the defendant's interaction with the police officer when no question was posed and no verbal exchange was had (and, therefore, the defendant was expectedly silent) and use that silence as evidence to infer the defendant's guilt.</u> This would engender a result where, in any encounter between a law enforcement officer and a citizen, the State would be able to adduce evidence of prearrest silence in myriad ways (e.g., When she was handing you her driver's license and registration, did she say anything about her injuries?, While she was opening the glove box, did she say anything about her injuries?, While she was outside the car, did she say anything?, etc.).

140 Hawaiʻi at 313-14, 400 P.3d at 514-15 (emphasis added).

We conclude that the DPA's argument that Nichols's failure to "say anything" was evidence of his guilt constituted a flagrant violation of Nichols's due process rights and prosecutorial misconduct. Defense counsel did not object, but this court may nevertheless recognize such misconduct as it was plainly erroneous due to its effect on Nichols's substantial rights. <u>See</u> <u>State v. Wakisaka</u>, 102 Hawaiʻi 504, 513, 78 P.3d 317, 326 (2003).

Thus, we consider "whether there is a reasonable possibility that the error complained of might have contributed to the conviction. Factors considered are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." <u>Id.</u> (citation and internal quotation marks omitted).

All three factors weigh in Nichols's favor. As noted, the DPA's argument constituted a flagrant violation of Nichols's due process rights. There was no curative instruction. And, finally, there was very little other evidence from which a reasonable juror could infer that Nichols acted intentionally or knowingly with respect to the Violation of Rules and Orders. In fact, practically the only other evidence was Officer Bryce's testimony, in response to the DPA's questioning, "did you inquire and get a response as to if [Nichols] had an occupation?", Nichols "related he was a -- a cook." "At a restaurant?" "Yeah."[7] Thus, in essence, the only other evidence purportedly establishing Nichols's knowledge of the stay-at-home order was evidence indicating that (1) Nichols worked in an industry impacted by a different rule in the Proclamation that issued the stay-at-home order; and (2) a different person (Orr) knew about the order. We cannot conclude there is no reasonable possibility that the prosecutorial misconduct here contributed to Nichols's conviction for Violation of Rules and Orders.

Finally, the supreme court has held that, "in limited 'exceptional circumstances,' prosecutorial misconduct may be 'so egregious' that the double jeopardy protections of article I, section 10 of the Hawaiʻi Constitution may bar retrial." State v. Underwood, 142 Hawaiʻi 317, 329, 418 P.3d 658, 670 (2018) (citation omitted). A very high standard is applied to determine if misconduct is sufficiently egregious and "the relevant inquiry

---

[7] On cross-examination, Orr testified that he knew Nichols was a cook at a restaurant. Orr also testified that he, Orr, knew about the stay-at-home order.

is whether, 'from an objective standpoint,' the misconduct was so egregious that it 'clearly denied a defendant his or her right to a fair trial.'" Id. In this case, the DPA did not simply make a passing comment on Nichols's silence, he directly argued that: "You can infer . . . by the fact that [Nichols] didn't argue with the officer, . . . he's guilty of that charge." We conclude that this misconduct was so egregious that it clearly denied Nichols his right to a fair trial, and therefore, a retrial is prohibited by the protections of double jeopardy. Accordingly, we need not reach the issue of insufficient evidence.

For these reasons, the Circuit Court's October 12, 2021 Judgment is affirmed with respect to Nichols's conviction of Assault LEO Second, and reversed with respect to Nichols's conviction of Violation of Rules and Orders.

DATED: Honolulu, Hawaiʻi, November 7, 2024.

| On the briefs: | /s/ Katherine G. Leonard<br>Acting Chief Judge |
|---|---|
| William K. Li,<br>for Defendant-Appellant. | /s/ Keith K. Hiraoka<br>Associate Judge |
| Brian R. Vincent,<br>Deputy Prosecuting Attorney,<br>City and County of Honolulu,<br>for Plaintiff-Appellee. | /s/ Clyde J. Wadsworth<br>Associate Judge |